**In re BOKUM RESOURCES CORP., a Delaware Corp., Debtor.**

**BOKUM RESOURCES CORP., Plaintiff,**

**v.**

**LONG ISLAND LIGHTING CO.,**
**Defendant (82–0202) and**
**Plaintiff (82–0235)**

**v.**

**BOKUM RESOURCES CORPORATION,**
**Defendant and Counterclaimant.**

**Bankruptcy No. 81–00666 CA.**
**Adv. Nos. 82–0202 G, 82–0235 G.**

United States Bankruptcy Court,
D. New Mexico.

May 30, 1985.

---

Stephenson, Carpenter, Crout & Olmsted by G. Stanley Crout, Santa Fe, N.M., for Bokum Resources Corp.

Davis Polk & Wardwell by Steven F. Goldstone, New York City, for Long Island Lighting Co.

### ORDER RE: RESOLUTION OF CORE, NON–CORE PROCEEDING, AND JURY TRIAL

JAY L. GUECK, Bankruptcy Judge, Sitting by Designation.

The question before the Court is whether issues presently pending for trial between the debtor Bokum Resources (BRC) and its major creditor, Long Island Lighting Company (LILCO), should proceed to trial in the U.S. District Court to a jury, as requested by the debtor, or should be retained in the Bankruptcy Court for trial without a jury. There is third alternative which will be discussed—that of retaining the matter in the Bankruptcy Court for trial to a jury.

### FACTS

An Involuntary Petition under Chapter 11 of the Bankruptcy Code was filed on June 12, 1981. An order for relief entered on December 21, 1981, which was affirmed by the District Court for the District of New Mexico on July 13, 1982. This order for relief was further affirmed by the Court of Appeals for the 10th Circuit on December 27, 1983.

Prior to the Involuntary Petition, controversies arose between BRC and LILCO as a result of Uranium contracts into which the parties entered in prior years. The first such contract was a Uranium Concentrates Purchase Contract, dated January 30, 1976, (the 1976 U.C.P.C.). On April 7, 1978, the 1976 U.C.P.C. was amended and a series of additional contracts were then executed by the parties, dated July 21, 1978. These contracts and their terms are more fully discussed and explored in *Long Island Lighting Co. v. Bokum Resources*, 40 B.R. 274 (Bankr.N.M.1983).

On November 10, 1980, LILCO had commenced a foreclosure action against BRC in

the United States District Court. The jurisdictional basis upon which that action was predicated was diversity of citizenship, pursuant to 28 U.S.C. § 1332. BRC then filed a Counterclaim, on January 9, 1981, containing four Counts. BRC requested a trial by jury as to all counts of the Counterclaim at that time. When the Involuntary Petition was filed on June 12, 1981, the action in the United States District Court was stayed by Order of Judge Juan G. Burciaga, dated August 25, 1981. On January 29, 1982, Judge Burciaga entered an order removing the action pending before him, which by this time had been consolidated with other actions, to the bankruptcy court. The then-authority for that removal was generally based upon 28 U.S.C. § 1471. That action became Adversary Proceeding No. 82–0235 in the bankruptcy court.

Although BRC had demanded a jury trial as to all counts of its Counterclaim, by subsequent agreement of the parties this court did try Counts II, III and IV to a conclusion. That is the decision reported in *Long Island Lighting Co. v. Bokum Resources Corp., supra,* and is presently on appeal. Count I of BRC's Counterclaim asserted claims against LILCO, alleging tortious interference with BRC's negotiations involving Occidental Petroleum Co. That action remains to be tried, and is one of the matters which is the subject of this opinion.

In response to the Involuntary Petition, BRC filed an Answer and Counterclaim, dated July 23, 1981. In that Answer and Counterclaim, BRC alleged, *inter alia,* the same tortious interference with contractual relationships which had previously been alleged in the Answer and Counterclaim in the action pending in the United States District Court. Subsequently, on September 8, 1981 BRC filed with the Bankruptcy Court a motion to permit counterclaims, again asserting that LILCO interfered with BRC's business relation with Occidental Petroleum Co. Additional counterclaims were set forth, alleging that "LILCO has refused to accept tender of all uranium concentrates due for delivery to date" and

"has thereby breached its contracts and agreements with Bokum."

The breach of contract claims raised by the additional Counterclaims to the Involuntary Petition contain the same allegations commenced by BRC against LILCO in a Complaint filed in the State District Court, County of McKinley, State of New Mexico, on February 19, 1982. That Complaint sought damages from LILCO as a result of the alleged breach of contract. On March 26, 1982, LILCO had this matter removed to the United States District Court for the District of New Mexico who then, on April 20, 1982, transferred the matter to the United States Bankruptcy Court for the District of New Mexico. That action is Adversary Proceeding No. 82–0202. No jury demand can be found in that matter until October 31, 1984, when BRC amended its Complaint to specifically set forth in the record its request for a jury in that matter.

One of the defenses asserted by LILCO to BRC's state court Complaint, subsequently removed to the Federal District Court, is that the contract upon which BRC bases its breach of contract action is an "executory contract" which BRC cannot assume without meeting the requirements of § 365 of the Bankruptcy Code.

A review of the claims between the parties in Adversary Proceeding 82–0202 indicates that, while the action was not filed until after the Bankruptcy proceedings were commenced, these are issues which could have been brought absent bankruptcy in either the New Mexico State Court or the United States District Court, under 28 U.S.C. § 1332, and do not depend for their resolution upon any bankruptcy laws. The sole exception to this determination is the LILCO defense relating to executory contracts.

It has been assumed by the parties that the matters pending in Adversary Proceeding No. 82–0235, as well as those issues presented in BRC's Complaint against LILCO and LILCO's Counterclaim in Adversary Proceeding No. 82–0202, would be

tried in the U.S. District Court to a jury. The bankruptcy court has retained these matters for purposes of pretrial procedures. However, on January 30, 1985, I entered an Order suggesting that, as a result of the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAA"), it appeared the matters herein involved would be "core" proceedings which should be tried in the bankruptcy court. Further, it appeared the jury demand in Adversary Proceeding No. 82–0202 was not timely filed, which was further reason for retaining the matter for trial in the bankruptcy court.

Counsel for the parties have had the opportunity to brief the matter and to argue their positions to the Court. Having considered the arguments of counsel and having reviewed the various authorities which have attempted to unravel the core, non-core distinctions, as well as a review of the legislative history leading to the promulgation of the 1984 Bankruptcy Amendments and Federal Judgeship Act, it is my conclusion that the issues remaining to be tried should be tried in the United States District Court to a jury and that they are not properly denominated as "core" proceedings under 28 U.S.C. § 157(b)(2) for reasons set forth in the analysis which I am about to undertake.

## QUESTIONS PRESENTED

The questions to be determined are three:

I. *Are the issues presently pending before the Court "core" proceedings or proceedings "related to" this Title 11 case?*

II. *Are the parties entitled to a jury to determine some or all of the pending issues?*

III. *If the parties are entitled to a jury, should the matter be tried in the Bankruptcy Court, the U.S. District Court, or the New Mexico state court?*

## CONCLUSIONS

I. *Are the issues presently pending before the Court "core" proceedings or proceedings "related to" this Title 11 case?*

Resolution of whether the matters before the Court are core or related proceedings requires a review of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 ("BAA") and decisions construing that Act. Interpretation of the statute begins, of course, with the statutory language. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

The BAA requires, in 28 U.S.C. § 157(b)(3) that the bankruptcy judge determine, on the judge's own motion or on timely motion of a party, whether the proceeding is a core proceeding under § 157 or is a related proceeding. If the matter is determined to be a core proceeding, the bankruptcy court may hear it and render a final determination, subject to appeal. 28 U.S.C. § 157(b)(1). Otherwise, the bankruptcy court may hear a non-core, related proceeding and submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). Nowhere does the BAA address what is to be done where a jury is requested in either a core or related proceeding. That is a matter which will be later addressed herein.

The BAA lists a non-inclusive series of examples of what is to be regarded as within the definition of a "core" proceeding. 28 U.S.C. § 157(b)(2). Unfortunately, the BAA provides no real definition of the term, leaving that for determination in the courts. The few courts that have had occasion to address this issue have proceeded in different directions and have arrived at varying conclusions. An analysis of those decisions has been undertaken here, in an effort to glean some trend in interpretation. The result yields little by way of guidance; but neither does the statute.

In a decision emanating from this Circuit, out of the U.S. District Court of Colorado, Judge Carrigan determined that a complaint filed by the debtor-in-possession against a defendant/creditor, seeking injunctive relief arising out of an alleged breach of a leasing contract, was a non-core proceeding over which the district

court found the bankruptcy court had no jurisdiction. *In re Caralee Jean Pierce*, 44 B.R. 601 (D.C.Colo.1984). The debtor, Pierce, filed a Chapter 11 proceeding. At the time of filing, Pierce also filed Statements and Schedules, listing Airport Development Corporation as a creditor having an unsecured claim without priority. On May 16, 1984, Pierce filed the Adversary Complaint against Airport Development Corp. for breach of a leasing agreement. The Complaint sought injunctive relief, to allow Pierce to collect and retain funds without interference from Airport Development Corp.

An Answer and Counterclaim was filed by Airport Development Corporation on July 2, 1984. The Counterclaim alleged conspiracy to deny Airport Development the use of its land, tortious interference with contract, constructive eviction, breach of contract, abuse of process and sought injunctive relief. The plaintiff then filed a "Reply to Counterclaims and Counterclaim", on July 25, 1984. This "Counterclaim" alleged four new causes of action for default in the lease agreement, failure of consideration and frustration of purpose in the lease between plaintiff and defendant, damages for reduction in value of property and leases, and damages for a frivolous and groundless action. Airport Development then filed a "Reply to Counter-claims" on August 17, 1984, finally closing the pleadings. Neither party requested a jury on any of the issues.

The bankruptcy court, on August 9, 1984, before the "Reply to Counterclaims" was filed, entered orders that it would confine itself to "core" issues in the plaintiff's Complaint. The bankruptcy court then denied a motion to allow the issues to be arbitrated. Thereafter, the court enjoined the defendant, Airport Development Corp., from collecting rents or interfering with the plaintiff.

The bankruptcy court's order was appealed to the district court, where an order was entered on November 30, 1984, dissolving the bankruptcy court Order and dismissing all claims of the debtor against Airport Development Corporation on the basis that the bankruptcy court lacked jurisdiction. The district court concluded that there was "no relevant difference" between the issues in *Pierce* and those presented in the state contract claim seeking damages in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The court did not address whether the matters in *Pierce* met the definition of "core" under 28 U.S.C. § 157(b)(2) except as to subsection (E) thereof, relating to "orders to turnover property of the estate". The court noted that "... it is clear that 'core proceedings' do not encompass separate state law contract actions. A different construction of § 157 would require explicit rejection of the *Marathon* mandate." *In re Pierce, supra*, at page 802. There is no discussion in the opinion of the propriety of administering the matter in the bankruptcy court as a related proceeding. While that issue was briefed by the parties, the court dispensed with oral argument; so there is no transcript of any opportunity to discuss the issue in argument.

The *Pierce* decision is now on appeal in the Tenth Circuit Court of Appeals. Since this disposition in the district court, Airport Development Corporation has filed a Proof of Claim for "no less than $500,000.00" for damages arising from the breach of lease and interference with business relations by the debtor. Query: Would these proceedings now be held to be proper in the bankruptcy court as "counterclaims by the estate against persons filing claims against the estate" under § 157(b)(2)(C)? This would result in conferring jurisdiction in the bankruptcy court where no such jurisdiction would otherwise exist, simply because the issues involved a bankrupt. As pointed out by Chief Judge Owens of the United States District Court for the Middle District of Georgia: "Such claims ordinarily would be tried in a state court, but, because of the fortuitous circumstance of a pending bankruptcy action, are swept into the jurisdiction of an Article I bankruptcy court because of the expansive definition of

'property of the estate' as set forth in 11 U.S.C. § 541 (West 1979). It was these types of claims which obviously contributed to the Supreme Court's concern in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)." *Macon Prestressed Concrete Company v. Duke*, 46 B.R. 727 (M.D.Ga.1985). In any event, the last word has apparently not yet been uttered in *Pierce, supra.*

In *In re Morse Electric Co., Inc.*, 47 B.R. 234 (Bankr.N.D.Ind.1985), the debtor filed, on August 24, 1984, an Adversary Proceeding based on a breach of contract, "bad faith injury to business" and negligence. The Complaint arose out of a pre-petition contractual relation between the debtor and defendants. The Complaint alleged damages as a result of the defendants actions, all of which, it was contended, forced the debtor into bankruptcy. No indication is set forth in the decision whether the defendant was a creditor in the case. The parties agreed that the only subsection under which the issues before the Court could be considered as "core" was 28 U.S.C. § 157(b)(2)(O), which categorizes as "core":

"(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2)(O).

The bankruptcy court reviewed the definition of "core" and "related" proceedings, noting that such terms are not defined in the BAA. The court then referred to a definition set forth in the Tenth Circuit, wherein "related proceedings" were defined as "those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court." *Matter of Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir.1984). Reference was also made to Chief Justice Burger's suggested definition in *Northern Pipeline, supra:*

"[A] 'traditional' state common-law action, not made subject to a federal rule of decision, and related only peripherally to

an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an 'Article III court' if it is to be heard by any court or agency of the United States." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., supra,* [102 S.Ct.] at pg. 2882.

Based upon these definitions, the Court in *Morse Electric Co., supra,* found that the proceeding fell squarely into the "noncore" category as a pre-petition cause of action based on the state common law and related only peripherally to the bankruptcy itself. Thus, it was a "related" proceeding. An interesting twist is then presented in *Morse.* The bankruptcy judge determined that under § 1411 of Title 28, the bankruptcy court was not precluded from conducting a jury trial of this nature. However, since the matter was determined to be a "related" proceeding, the judge noted his inability to enter a final judgment and found that a jury trial would be "impractical." Then, instead of suggesting withdrawal to the district court for purposes of a jury trial, the bankruptcy judge simply concluded he would try the related proceeding without a jury and submit it to the district court on proposed findings of fact and conclusions of law. I have considerable concern about this result in light of the Seventh Amendment to the Constitution of the United States.

Another recent decision found a breach of warranty action by the debtor to be a non-core (related) proceeding. *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 46 B.R. 464 (D.C. Mass.1985). There, the debtor, Mohawk, sued Robinson Industries in bankruptcy court for breach of express and implied warranties. It is not clear whether Robinson was listed as a creditor. However, Robinson Industries asserted a right of set-off as an affirmative defense. Both parties demanded trial to a jury. The matter was transferred to the district court to determine the appropriate forum to try the issues. An argument was made by the debtor that the proceedings should be referred back to the bankruptcy

court to be tried as a "core" matter under § 157(b)(2)(O). The district court noted that whether the debtor prevailed in the litigation would affect the quantum of assets the estate would have to distribute. The district court also acknowledged the defendant's assertion of a right to setoff could certainly be thought of as involving the "adjudication of the debtor-creditor ... relationship", as referred to in § 157(b)(2)(O). *Mohawk Industries, Inc. v. Robinson Industries, Inc., supra,* at pg. 465.

Since *Northern Pipeline* also involved a debtor's breach of warranty claim, the court found, in *Mohawk,* that a literal interpretation of § 157(b)(2)(O) would result in an unconstitutional adjudication of rights by an Article I court, citing *In re Atlas Automation, Inc.,* 42 B.R. 246 (Bankr.E.D. Mich.1984).

Contrary to the result in *Pierce, supra,* the district court in *Mohawk* went on to find the non-core proceeding could be referred to the bankruptcy court for proposed findings of fact and conclusions of law. However, since the parties had asked for a jury, the court found that such referral would be unwise. The basis upon which the court reached this conclusion was stated as follows: "Assuming that the bankruptcy court still has the power to conduct jury trials in these kinds of cases (a matter on which the court expresses no opinion), the *de novo* review required by 28 U.S.C. § 157(c)(1) would mandate a second jury trial in the district court if either party objected." *Mohawk Industries, supra,* at pg. 466. Thus, referral to the bankruptcy court was denied.

In *In re Atlas Automation, Inc.,* 42 B.R. 246 (Bankr.E.D.Mich.1984), referred to in *Mohawk Industries, supra,* the debtor-in-possession sued a party, Jensen, Inc., who was otherwise a stranger to the proceedings. The basis of the lawsuit was an alleged account receivable due and owing to the debtor. The defendant counterclaimed and requested a jury. The decision did not turn on the jury demand, but the Court noted a controversy exists whether the bankruptcy court could conduct such a proceeding. Both the Complaint and Counterclaim were based on contract theories.

The bankruptcy court, in *Atlas,* noted it must read "orders to turnover property of the estate" or "other proceedings affecting the liquidation of the assets of the estate ..." to include the collection of accounts receivable or breach of contract actions if the matters before it were to constitute a core proceeding. The legislative intent would not permit such a finding in the view of that court. Thus, even though the account receivable sought by the debtor was in the nature of a turnover proceeding under § 157(b)(2)(E), the matter was determined to be a "related" proceeding.

The District Court of Michigan's referral order directed the bankruptcy judge to handle the matter through pretrial to the pretrial conference, and also to prepare written recommendations regarding the effect of this litigation on disposition of the underlying bankruptcy petition. In accordance with the mandate given the bankruptcy court by the district court, the bankruptcy court reviewed the matter and recommended that the district court abstain and allow the matter to be tried in the state court. The basis for this recommendation was 28 U.S.C. § 1334(c)(1), which recodified 28 U.S.C. § 1471(d), allowing voluntary abstention. In recommending abstention, the bankruptcy court cited to the legislative history which recognized that exigencies arise in various cases in which it is more appropriate to have a state court hear a particular matter of state law. H.R.Rep. No. 595, 95th Cong., 1st Sess. 446 (1977), U.S.Code Cong.Adm.News 1978, pp. 5787, 6401.

The *Atlas Automation* Court struggled with the examples of core proceedings listed in § 157(b)(2) and observed that the attempt to collect an account receivable by the debtor could certainly be regarded as a "turnover" proceeding and that money due a debtor is "property of the estate" and that the action certainly affects the "liquidation of the assets of the estate", which appears in the catch-all phrase in

§ 157(b)(2)(O). Nevertheless, the Court determined it could not ignore the legislative intent behind the BAA, which was enacted in response to *Northern Pipeline.* Thus, although the bankruptcy judge stated he did not know the perameters of the definition of "turnover property of the estate" and "proceedings affecting the liquidation of the assets of the estate", those definitions were not intended to include issues such as those present in *Atlas Automation, Inc.*

Another attempt by a debtor to collect on an account receivable, based on state law, was found to be a "related" proceeding in *In re Smith-Douglass, Inc.,* 43 B.R. 616 (Bankr.E.D.N.C.1984). A timely jury demand was made by the defendants in *Smith-Douglass.* The court found the parties would be entitled to such a jury in the state court, and should also receive a jury in the bankruptcy court. This matter was filed in June, 1984, at a time when 28 U.S.C. § 1480(a) was in effect. The court noted the problem, but specifically refused to consider whether § 1480 survived the BAA.

In *Smith-Douglass,* the court found no prohibition to exist against holding a jury trial in the bankruptcy court, but determined such a jury would be impractical since it could not enter a final judgment in a related proceeding. There was no consent to proceed in the bankruptcy court, so that no final judgment could enter. The reasoning employed in *Smith-Douglass* appears to be the same as in *Mohawk Industries,* except that the court in *Smith-Douglass* explicitly found that the bankruptcy court had jurisdiction to try a jury trial. The court then reached a similar result to that in *Atlas Automation,* electing discretionary abstention under 28 U.S.C. § 1334(c)(1) rather than suggesting withdrawal to the United States District Court.

On July 17, 1984, just one week after the BAA was passed, the United States District Court for the Northern District of New York had occasion to review a bankruptcy court decision awarding two parties in a consolidated action damages against the trustee of the bankrupt, G & L Packing Co., as well as against the Orange Meat Packing Co., finding the two defendants to be a single integrated corporate entity. *In re G & L Packing Co., Inc.,* 41 B.R. 903 (N.D.N.Y.1984). The bankruptcy court also directed that G & L's trustee in bankruptcy retain certain sums of the bankrupt's accounts receivable until the rights of certain non-parties could be determined. The matter was presented to the district court on proposed findings of fact and conclusions of law in the bankruptcy court, who considered the evidence *de novo,* finding the matter to be a "related proceeding" within the meaning of that district's emergency rule as well as a proceeding "otherwise related to a case under Title 11" under 28 U.S.C. § 157(c)(1). Thus, the court reviewed the findings of fact of the bankruptcy court in accordance with the *de novo* standards set forth in 28 U.S.C. § 157(c)(1) rather than an appeal of a final judgment under B.R.P. 8013. The action in *In re G & L Packing Co., supra,* was to enforce statutory trust rights under the Packers and Stockyards Act and was a civil proceeding that, in the absence of a petition in bankruptcy, could have been brought in a district court pursuant to 7 U.S.C. § 209. Here, it is to be observed, the controversy fit the definition of a "related" proceeding under *Matter of Colorado Energy Supply, supra,* but did not fully fit the definition of Justice Burger in *Northern Pipeline, supra,* (i.e., .... "not made subject to a federal rule of decision.") *Northern Pipeline, supra,* at p. 2882. In any event, the district court concluded the matter could not be construed as a "core proceeding" but was a "related proceeding" over which the bankruptcy court had jurisdiction to enter proposed findings of fact and conclusions of law.

*In re Dr. C. Huff Company, Inc.,* 44 B.R. 129 (Bankr.W.D.Ky.1984), involved an adversary proceeding between two creditors in a lien dispute between them but in which the debtor had no interest. It was determined that the dispute involved no issues of bankruptcy law and did not concern either property of the debtor or prop-

erty of the estate. Thus, the court concluded it had no jurisdiction over the lien controversy as a "core" proceeding under 28 U.S.C. § 157(b)(2)(K), nor did it have jurisdiction over the matter as a "related" proceeding. The outcome on the merits would not even have a "peripheral relation" to the debtor's bankruptcy proceeding.

One bankruptcy judge has held that 28 U.S.C. § 157(b)(2)(F) relating to preference actions constitutes an improper attempt to confer jurisdiction on a non-Article III court to the extent an action is brought against a defendant who does not consent to jurisdiction in the bankruptcy court. *In re Associated Grocers of Nebraska Cooperative, Inc.*, 46 B.R. 173 (Bankr.Neb.1985). The basis for this holding is that the preference determination between the debtor and the defendant involved the adjudication of purely private rights which, under *Northern Pipeline*, must be tried to an Article III court, absent consent. He notes that *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), merely sustained jurisdiction for an Article I court to try a preference cause of action because consent was present. Thus, *Katchen v. Landy* was held not to be controlling. Accordingly, a motion to dismiss a preference action under § 547 of the Code, in spite of the clear listing of such an action as a core proceeding under 28 U.S.C. § 157(b)(2)(F), was granted as being beyond the jurisdiction of the bankruptcy court. As in *Pierce*, there is no discussion of the jurisdiction of the bankruptcy court to administer the matter as a related proceeding, submitting proposed findings of fact and conclusions of law to the district court.

Other courts have strained to find the existence of a core proceeding, allowing the bankruptcy court to go forward for entry of a final judgment. Such a core proceeding was found to exist in *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727 (M.D.Ga.1985). There, the District Court for the Middle District of Georgia found a core proceeding to exist in a motion to withdraw reference of a Chapter 11 debtor's counterclaim for a setoff filed in response to proofs of claim filed by the creditors. The proofs of claim had been filed by two individuals, Mr. Duke and Mr. Hutton. Their claims arose from promissory notes executed by the debtor to Duke and Hutton for purchase of their interest in Southeastern Porcelain and Construction Co., Inc. (SPC). The debtor, Macon Prestressed Concrete, objected to the claim based on fraud, misrepresentation and failure of consideration. Macon also filed the counterclaim, alleging fraud and sought recovery of payments made on the promissory notes as preferential transfers or fraudulent conveyances. Alternatively, Macon sought equitable subordination of the claims. The district court determined that Macon's claims constituted "counterclaims by the estate against persons filing claims against the estate" pursuant to 28 U.S.C. § 157(b)(2)(C).

Macon demanded a jury on its counterclaims. The district court commented that such a claim would ordinarily be tried in the state court, but then made its previously-noted determination that the claim came within the jurisdiction of an Article I bankruptcy court by virtue of the "fortuitous circumstance" of a pending bankruptcy action and the expansive definition of "property of the estate" as set forth in 11 U.S.C. § 541.

Chief Judge Owens, the District Judge, concluded that the matters constituted "core" proceedings for several reasons. First, Macon's counterclaim was intimately connected with the petition for reorganization. Secondly, the acquisition of SPC could constitute substantial property of the estate; and third, Macon's liability on it's notes to Duke and Hutton certainly constituted a substantial portion of Macon's business debt. The court also felt that a determination of the rights of the parties with respect to the sale of SPC, though controlled by state law, should be tried in one court having jurisdiction over Macon Prestressed Concrete's business affairs. For this reason, the court concluded that abstention was not warranted.

Finally, having determined the proceedings to be "core", the district court held that the matters should be tried in the bankruptcy court, concluding that a withdrawal of reference was not warranted and that any jury trial on a core proceeding could result in a final judgment in the bankruptcy court. There is no discussion of the ramifications of extending the right to trial by jury to "core" proceedings.

Other decisions have found core proceedings to exist, sometimes appearing to hearken back to the jurisdictional relationship between district courts and bankruptcy courts under the Bankruptcy Act prior to 1978. Chief Judge Goldhaber, in *In re Marketing Resources International*, 43 B.R. 71 (Bankr.E.D.Pa.1984), found a complaint by the debtor against a creditor for tortious interference with contractual relationships to be a core proceeding. The creditor had filed a proof of claim against the estate, and Judge Goldhaber construed the debtor's complaint to be a counterclaim by the estate against a person filing a claim against the estate under 28 U.S.C. § 157(b)(2)(C). This, and *Macon*, appear to be rather mechanical applications of the statute and result in a return to the much-maligned jurisdiction by ambush which prevailed prior to 1978. A liberal reading of § 157 causes a creditor, by merely filing a proof of claim against the estate, to subject itself to the general jurisdiction of the bankruptcy court. This general jurisdiction would relate to any and all counterclaims of any type and nature, conferring jurisdiction upon the bankruptcy court where jurisdiction would not otherwise exist. In such circumstances, the bankruptcy court, by virtue of the mere filing of a bankruptcy action, would proceed to enter final judgment without any supervision whatsoever by an Article III court, save an appeal under 28 U.S.C. § 158. As will later be developed herein, I doubt that Congress or the Supreme Court intended such a result.

*In re Lombard-Wall, Incorporated*, 48 B.R. 986 (S.D.N.Y.1985), involved another debtor's counterclaim to a creditor's proof of claim. The bankruptcy judge was appointed to act as a "special master" by the district court, pursuant to that court's Emergency Bankruptcy Rule then in existence, to handle various matters involving the bankrupt and the New York City Housing Development Corporation (HDC). During the various proceedings, Lombard filed a Complaint asserting sixteen claims for relief in response to HDC's proof of claim for an alleged undetermined amount of indebtedness. HDC then moved the district court to withdraw the reference from the bankruptcy court and to have the matter tried before a jury in the district court. It was contended that the bankrupt's action involved primarily state common law claims that were only peripherally related to the Lombard bankruptcy proceeding. Therefore, on the basis of *Northern Pipeline, supra*, it was argued that the bankruptcy court could not constitutionally exercise jurisdiction over such claims.

The district court referred the motion to the bankruptcy court as a special master. After hearing argument, the bankruptcy judge issued an extensive recommendation finding that HDC had consented to jurisdiction by virtue of filing its proof of claim, as well as expressly agreeing in a stipulation to the bankruptcy court's retention of jurisdiction and by failure to object to jurisdiction in Lombard's plan of reorganization.

The district court's opinion adopted the ultimate conclusions with respect to jurisdiction. The Court discussed the Emergency Rule, as well as the BAA, and found all of the issues to be core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(C). The court noted in a footnote that the matter may fit within other subsections defining core proceedings as well.

Bankruptcy Judge Buschman, for the Southern District of New York, undertook an analysis of the core, non-core question as it related to a motion to stay certain litigation in the district court. Various causes of action had been brought to enforce contractual obligations against persons and entities associated with the debt-

or. Counterclaims were asserted based on allegations of fraud, some of which were brought pursuant to the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). The court determined the issues to be core matters in that they concerned the administration of the estate, affected the adjustment of the debtor-equity security holder relationship, were in the nature of turnover proceedings, constituted claims against the estate and were counterclaims by the estate against persons making claims against the estate. *In re Lion Capitol Group*, 46 B.R. 850 (Bankr.S.D.N.Y.1985). This decision was affirmed by the district court in an order denying a motion to withdraw the reference. *In re Lion Capitol Group, et al*, 48 B.R. 329 (S.D.N.Y. 1985). The district court decision in *Lion Capitol Group* was based in large part upon an attempt to explore the legislative intent of Congress as represented by numerous citations to the statements of various Congressmen in floor discussions. Since no committee reports accompanied the 1984 Bankruptcy Amendments, these comments from the floor are all that is available by way of legislative history. Unfortunately, the Supreme Court has recently reiterated its refusal to rely upon such comments as constituting any authority for legislative intent. *Garcia v. United States*, 469 U.S. ——, 105 S.Ct. 479, 83 L.Ed.2d 472, (1984). As Justice Rehnquist stated there:

> "In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the committee reports on the bill, which 'represent [ ] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.' *Zuber v. Allen*, 396 US 168, 186 [90 S.Ct. 314, 324, 24 L.Ed.2d 345] (1969). We have eschewed reliance on the passing comments of one member, *Weinberger v. Rossi*, 456 US 25, 35 [102 S.Ct. 1510, 1517, 71 L.Ed.2d 715] (1982), and casual statements from the floor debates. *United States v. O'Brien*, 391 US 367, 385 [88 S.Ct. 1673, 1683, 20 L.Ed.2d 672]

(1968); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 US 102, 108 [100 S.Ct. 2051, 2056, 64 L.Ed.2d 766] (1980). In *O'Brien*, supra, at 385, [88 S.Ct. at 1683] we stated that Committee Reports are 'more authoritative' then comments from the floor, and we expressed a similar preference in *Zuber*, supra, at 187." *Garcia v. United States*, 469 US ——, 105 S.Ct. 479, 483, 83 L.Ed. 2d 472, 478 (1984).

Nonetheless, while Congressional remarks may not constitute persuasive authority, such remarks should probably not be totally ignored, especially insofar as they reflect the considered thinking of those who promulgated the very legislation now under consideration.

A review of what floor discussions exist serves to clarify why the Supreme Court takes the position it has assumed. Nevertheless, it is fair to say the expressed intention of Congress was that the 1984 jurisdictional amendments were essentially a legislative enactment of the Emergency Bankruptcy Rule. 130 Cong.Rec. H1846 (daily ed. March 21, 1984) (statement of representative Kastenmeier); p. H1847 (statement of representative Kindness). As pointed out by those representatives, the Emergency Rule ("Model Rule") was upheld by a number of Circuit Courts of Appeal. *See: In the Matter of Colorado Energy Supply, Inc.*, 728 F.2d 1283 (10th Cir.1984); *In the Matter of Braniff Airways*, 700 F.2d 214 (5th Cir.1983); *cert. den. sub nom, American Airlines, Inc. v. Braniff Airways*, 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983); *In the Matter of Hansen*, 702 F.2d 728 (8th Cir.1983), *cert. den. sub nom First National Bank of Tekamah v. Hansen*, 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254 (6th Cir.1983); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3rd Cir.1983), *cert. den.* —— U.S. ——, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); *In re Kaiser*, 722 F.2d 1574 (2d Cir.1983). Without regurgitating the reasoning employed in upholding the Emergency Rule, it can be

observed that a common thread throughout the decisions was the fact that in the absence of the Model rule, an emergency of monumental Constitutional proportions faced the entire bankruptcy system. Congressional inaction left a chasm in the courts which necessitated an emergency rule to provide forums for the resolution of bankruptcy disputes. That Emergency Rule, while enacted to cope with the temporary jurisdictional hiatus, has now been made permanent. In due course it will be necessary for the appellate courts to wrestle with the constitutionality of this enactment as a permanent solution.

It is clear that any interpretation of 28 U.S.C. § 157 and the rest of the BAA must be made with Article III and the Seventh Amendment to the U.S. Constitution in mind. Such interpretation must always comport with the plurality opinion in *Northern Pipeline Construction Co., supra.*

The Supreme Court has indicated that causes of action asserting "private rights", even though related to a case under Title 11, are subject to the protections of Article III of the Constitution of the United States. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., supra.* Even Justice White, writing in dissent (in which the Chief Justice and Justice Powell joined) in *Northern Pipeline*, stated the holding to be: "Because the immediate controversy in this case—Northern Pipeline's claim against Marathon—arises out of state law, it may only be adjudicated, within the federal system, by an Article III court." *Northern Pipeline Construction v. Marathon Pipe Line Co., supra,* 102 S.Ct. at p. 2883. Justice White argued, however, that by virtue of *Katchen v. Landy, supra,* referees or bankruptcy judges had long exercised jurisdiction over various matters involving state law issues without constitutional objection. Indeed, he pointed out that if Marathon had filed a claim against the bankrupt in that case, the trustee for Northern Pipeline could have filed, and the bankruptcy judge could have adjudicated, any counterclaim seeking the relief that

was involved in that case. To this, Justice Brennan countered:

"But those particular adjunct functions, which represent the culmination of years of gradual expansion of the power and authority of the bankruptcy referee, ... have never been explicitly endorsed by this court. In *Katchen v. Landy, ...,* on which the dissent relies, there was no discussion of the Article III issue." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., supra,* 102 S.Ct. at p. 2876, fn. 31.

It is this confusing position in *Northern Pipeline* that appears to have lead to the seemingly severe holding in *Associated Grocers, supra,* [preference action unconstitutional as a core matter].

The Amendments in the BAA attempt to address the Article III protection, as discussed in *Northern Pipeline*, by providing for those non-core, "related", "private rights" adjudications to be subject to final adjudication by an Article III court. This would satisfy the impediment found to exist when the court stated, in *Northern Pipeline*, at p. 2880, that the Bankruptcy Code of 1978 had impermissibly removed "the essential attributes of the judicial power" from the Article III district courts and vested that power in non-Article III bankruptcy courts.

Chief Justice Burger, writing separately in dissent in *Northern Pipeline*, apparently perceived that difficulties would be encountered in determining the types of actions required to be heard by an Article III court. His synopsis of what Justice Rehnquist stated in his concurrence in the judgment of the court has come to be used to define "related" proceedings—that being "'traditional' state commonlaw action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, ..." *Northern Pipeline, supra,* at p. 2882.

Justice Rehnquist, in formulating his concurring opinion, with whom Justice O'Connor joined, noted that the law suit between Northern Pipeline and Marathon was one in which Northern sought dam-

ages for "breach of contract, misrepresentation, and other counts which are the stuff of the traditional actions at common law tried by the courts at Westminster in 1789. There is apparently no federal rule of decision provided for any of the issues in the lawsuit; the claims of Northern arise entirely under state law. No method of adjudication is hinted at, other than the traditional common law mode of judge and jury. The lawsuit is before the bankruptcy court only because the plaintiff has previously filed a petition for reorganization in that court." *Northern Pipeline, supra,* at p. 2881.

■ In light of the expressions set forth in *Northern Pipeline, supra,* one must question what difference it makes that the non-bankrupt party is a claimant in a bankruptcy proceeding or whether resolution of the dispute would augment the debtor's estate, affect liquidation of assets of the estate, or the adjudication of a debtor-creditor relationship, whether it is brought as a counterclaim (compulsory or permissive) against one who filed a claim against the estate, is in the nature of a "turnover" (many lawsuits by the debtor may be so categorized), or relates to preference or priority of a lien—that which may be denominated as a "core" proceeding under § 157 may well not pass muster when tested against the criteria set forth in *Northern Pipeline, supra.*

■ The controversies in this proceeding, between BRC and LILCO, certainly depend for their resolution on state law. They are matters which, but for the intervention of bankruptcy, could have been brought (and some were) in the state court. No federal rule of decision provides the resolution, except the question of assumption of executory contracts. That question can easily be resolved in this court, while all other litigation is in the district court. The question can also be resolved by the district judge in that litigation. I acknowledge that these very same issues drastically affect the debtor-creditor relationship between BRC and LILCO, and the results of the litigation affect BRC's liquidation of assets and could augment it's estate. Many of the issues are now postured in the context of counterclaims against BRC's major creditor, who asserts claims against the estate. These issues could be said to fall squarely within 28 U.S.C. § 157(b)(2)(A), (B), (C), (E) and (O). Nevertheless, I cannot interpret these sections literally. I am compelled to render a determination in light of the clear expressions of the plurality in *Northern Pipeline* relating to the adjudication of claims arising out of state law. With this in mind, I cannot conclude the issues before the court are "core" proceedings, but must regard them as state law issues peripherally related to this bankruptcy case. They are "related" proceedings. Ultimate resolution of the issues must rest with an Article III court.

II. *Are the parties entitled to a jury to determine some or all of the pending issues?*

BRC contends that it is entitled to a jury by virtue of 28 U.S.C. § 1480. The legislative history to that section indicated that the right to a jury trial should be preserved as it was under the then existing law. HR Rep. 595, 95th Cong.2d Sess. 157 U.S.Code Cong.Adm.News 1978, p. 5973. Section 1480 provided as follows:

"§ 1480. Jury Trials.

(a) Except as provided in subjectión (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

(b) The bankruptcy court may order the issues arising under section 303 of title 11 to be tried without a jury."

■ It is my conclusion that 28 U.S.C. § 1480 did not survive the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See:* Pub.L. 98–353, 98 Stat. 333, § 113. The 1984 BAA then enacted 28 U.S.C. § 1411 to preserve the right to trial by jury under applicable non-bankruptcy law with regard to a personal injury or

wrongful death tort claim. However, this section does not apply to the present action, which was pending on the date of enactment of the BAA. *See:* Pub.L. 98–353, 98 Stat. 333, § 122(b).

The controlling authority would apparently be B.R.P. 9015(a). That rule provides as follows:

"(a) **Trial by Jury.** Issues triable of right by jury shall, if timely demanded, be by jury, unless the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury."

There are two possible sources of a jury right in this case: The Seventh Amendment to the U.S. Constitution or a statute. *Sibley v. Fulton DeKalb Collection Service,* 677 F.2d 830 (11th Cir.1982).

■ There appear to be no applicable statutes which would entitle parties to a jury as a matter of right. Any right which they would have to a jury trial would come from the Seventh Amendment. The Seventh Amendment test is an historical one. If the issue would have been tried in the courts of equity, there is no right to a jury. However, such a right does exist if the issue would have been tried in a court of law. *See generally:* Wright and Miller, *Federal Practice and Procedure,* § 2302, p. 15 (1971).

■ Bankruptcy courts are historically courts of equity. *In re Hause,* 10 B.R. 628 (Bankr.Mass.1981); *see also: In re Beery,* 680 F.2d 705 (10th Cir.1982). Thus, under the former Bankruptcy Act, matters over which the bankruptcy courts had jurisdiction (i.e., summary proceedings) were equitable issues and no jury right attached. *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *In re Merril,* 594 F.2d 1064 (5th Cir.1979). On the other hand, if the bankruptcy courts did not have jurisdiction (i.e., plenary proceedings), the nature of the issue determined if a jury right existed.

A review of the history of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2682, and the Bankruptcy Amendments of 1984 is instructive in determining the issues which are triable by right to a jury under existing law. The Bankruptcy Reform Act included a broad jurisdictional grant to the bankruptcy court, as set forth in 28 U.S.C. § 1471. The legislative history of the Bankruptcy Reform Act indicates that § 1471 was intended to leave no doubt that bankruptcy courts could exercise jurisdiction over all matters under which a claim is made under Title 11. S.Rep. No. 989, 95th Cong.2d Sess., 153–4 (1978). It was anticipated that bankruptcy courts would exercise jurisdiction over all actions, regardless of whether they had previously been denominated as summary or plenary proceedings.

The Congress enacted 28 U.S.C. § 1480 to preserve any right to a jury which might have existed prior to enactment of the Bankruptcy Reform Act. H.R.Rep. No. 595, 95th Cong. 1st Sess. 448 (1977). Thus, even though an issue was being tried in the bankruptcy court, historically a court of equity, a right to a jury would still exist in some cases, e.g. *In re Frank Meador Buick, Inc.,* 8 B.R. 450 (Bankr.W.D.Va. 1981).

Cases interpreting 28 U.S.C. § 1480 developed a two-part test to determine if a jury right existed. *In re Mozer,* 10 B.R. 1002 (Bankr.Colo.1981). The first step in the analysis was to decide if the matter would have been classified as a summary or plenary proceeding under the former Act. Summary proceedings were not entitled to a trial by jury. However, if the matter would have been a plenary proceeding, the right to a jury was determined by whether any court in which the plenary proceeding could have been brought would have recognized a right to a jury. *In re Mozer, supra; see also, In re Coast Trading Co., Inc.,* 31 B.R. 666 (Bankr.Ore.1982); *In re Portage Associates, Inc.,* 16 B.R. 445 (Bankr.N.D.Ohio 1982).

As is now well known, the United States Supreme Court struck down the broad jur-

isdictional grant contained in 28 U.S.C. § 1471(c). *Northern Pipeline Construction Co. v. Marathon Pipeline Company, supra.* The Supreme Court's holding in *Northern Pipeline* necessitated the amendments to Title 28 which the Congress attempted to address in the 1984 BAA.

In addition to creating the core-related proceedings distinctions in 28 U.S.C. § 157, the Congress also added § 1411(a) to provide for jury trials under certain circumstances. As previously noted, § 1411(a) does not apply to the case at bar. However, the language of that statute, when compared to the old 28 U.S.C. § 1480, gives some indication as to when a jury right exists. The newly enacted § 1411(a) provides:

> "(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim."

As can be seen, § 1411(a) is quite exclusive in its right to a jury trial—it is applicable to personal injury or wrongful death tort claims. Congress demonstrated its capacity to draft a statute which applied to all types of issues when it felt such a statute was necessary. *See:* 28 U.S.C. § 1480 and discussion, *supra.* Congress must have concluded it was unnecessary to include an all-inclusive jury right statute in the 1984 BAA due to the more restrictive jurisdictional grant which that Act contains.

I have already concluded that the matters before me are not "core" matters wherein Congress has vested jurisdiction in the bankruptcy courts, as Article I courts, to enter final judgments. Such core proceedings are inherently proceedings in equity. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). No jury right exists in such equitable proceedings. *Katchen v. Landy, supra; Barton v.*

*Barbour,* 104 U.S. 126, 14 Otto. 126, 26 L.Ed. 672 (1881).

■ I have concluded that the proceedings herein are "related" proceedings, plenary in nature and based upon state common law principles. They would be triable to a jury under the common law. B.R.P. 9015(a) preserves the right to a jury with respect to issues triable of right by a jury, "if timely demanded." B.R.P. 9015(b)(1) requires that any party who wishes a jury shall make its demand in writing not later than 10 days after service of the last pleading directed to the issue in question. That was done in Adversary Proceeding No. 82–0235. It was not in Adversary Proceeding No. 82–0202.

■ Bokum argues, and cites authority in support of the proposition, that it should not be deprived of a jury trial in Adversary Proceeding No. 82–0202 solely on the basis that a jury demand was not timely filed. This Adversary Proceeding is before the court as a result of removal of an earlier action filed in the state district court on February 19, 1982. The earliest jury demand that can be found in the matter was made on October 31, 1984, in connection with amended pleadings to specifically request a jury. The Bankruptcy Rules of Procedure provide for the preservation of the right to trial by jury, "if timely demanded, ..." B.R.P. 9015(a). It is then provided in B.R.P. 9015(b)(1) that a timely demand requires service of the demand in writing not later than 10 days after service if the last pleading directed to such issue, unless the demand is endorsed on a pleading of the party. Subsection (d) of B.R.P. 9015 then provides that the court shall try all issues not demanded for trial by jury. However, it also provides: "Notwithstanding the failure of a party to demand a jury when such a demand might have been made of right, the court on its own initiative may order a trial by jury of any or all issues." This seems to allow some latitude and makes it unreasonable to impose strict adherence to be B.R.P. 9015(b) unless prejudice will result to the opposing party. This is similar to F.R.C.P. 39(b), which was

addressed by the Fifth Circuit in *Pinemont Bank v. Belk*, 722 F.2d 232 (5th Cir.1984), where it was held to be reversible error to deny a litigant trial by jury, even though a timely jury demand was not filed. One of the reasons set forth by the court for its holding was that the parties there were under the expectation that the matters would be tried to a jury and there were no "strong and compelling reasons" to deny the request for a jury. I find none present here either.

Additionally, I am persuaded by, and indeed bound by, the Tenth Circuit decision of *AMF Tuboscope, Inc. v. Cunningham*, 352 F.2d 150 (10th Cir.1965), wherein it was held to be reversible error and an abuse of discretion for a trial court, *sua sponte*, to deny a jury trial where the parties, by their conduct, had impliedly consented to trial by jury and had assumed the matter would be so presented.

A further reason exists to allow this Adversary Proceeding to go forward, inasmuch as it has been combined with Adversary No. 82–0235, which I have already determined to be a related proceeding to which the right to a jury trial would attach. No prejudice to LILCO has been demonstrated by allowing the matter to be tried to a jury, as had been so long contemplated prior to the adoption of the 1984 BAA and this court's order of January 30, 1985.

Accordingly, it is my determination that the parties are entitled to a jury to determine the issues before the court, except for resolution of the defense relating to executory contracts, which will be resolved by the district court as it deems appropriate.

III. *If the parties are entitled to a jury, should the matter be tried in the Bankruptcy Court, the U.S. District Court, or the New Mexico state court?*

Whatever may be the debate respecting trial by jury in bankruptcy courts elsewhere, the matter is resolved in this district. The Local Rule for reference of bankruptcy matters to this court provides in Miscellaneous No. 1426, Amendment to Local Rule 31, 1(c), as follows: "*Jury Trials*. A district judge shall conduct jury

trials in all bankruptcy cases and proceedings in which a party has a right to trial by jury and a jury is timely demanded."

Thus, while courts elsewhere have struggled with this question (*see: Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727 (M.D.Ga.1985); *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 46 B.R. 464 (U.S.D.C.D.Mass.1985); *In re Gibbons Construction, Inc.*, 46 B.R. 193, 12 B.C.D. 463 (U.S.D.C.Ky.1984); *In re Proehl*, 36 B.R. 86 (U.S.D.C.W.D.Va.1984); *In re Morse Electric Company, Inc.*, 47 B.R. 234 (Bankr.N.D.Ind.1985); *In re Smith-Douglass*, 43 B.R. 616, 12 B.C.D. 426 (Bankr.E.D.N.C.1984)), resolution in this district is easy.

It is recommended that the reference be withdrawn and that these Adversary Proceedings be tried to a jury in the United States District Court for the District of New Mexico.