**In re James SOKOL and Gail Sokol, Debtors.**

**James SOKOL, Plaintiff,**

**v.**

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, A Massachusetts Corporation, Defendant.**

**Bankruptcy No. 82 B 16730.
Adv. No. 84 A 470.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 25, 1986.

Joel A. Schechter, Grossman, Mitzenmacher & Schechter, Chicago, Ill., for debtors.

David J. Novotny, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for Mass. Mut. Life Ins. Co.

## MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

The debtor has filed a complaint seeking damages for breach of contract and fraud in connection with the termination of his employment as a salesperson for the defendant. The defendant in response filed a motion requesting this Court to determine whether this adversary is a core or noncore proceeding pursuant to 28 U.S.C. § 157(b)(3).

### I. *Facts*

James and Gail Sokol filed a joint petition under Chapter 13 of the United States Bankruptcy Code on December 13, 1982. The Court confirmed the debtors' plan on March 1, 1983. On March 21, 1983, James Sokol was terminated by his then employer Massachusetts Mutual Life Insurance Company ("Mass. Mutual"). On July 19, 1984, James Sokol filed this complaint against Mass. Mutual for breach of his employment contract and for fraud.

The debtor's complaint alleges that he was employed by Mass. Mutual from October 1977 to March 1983 as a group sales consultant. In 1981 Mass. Mutual asked the debtor to transfer from its Cleveland, Ohio office to its Oak Brook, Illinois office. Negotiations with respect to the terms of the transfer and the debtor's future employment that took place between the debtor and Mass. Mutual form the basis for the debtor's claim that an employment contract existed. The debtor accepted the position in the Oak Brook office and relocated his family to Hinsdale, Illinois in February 1982. On March 21, 1983, Mass. Mutual terminated the debtor's employment. Since May 31, 1983, the debtor has been employed elsewhere in the insurance industry, allegedly at a lower rate of pay and with fewer benefits than he would have received had he been allowed to stay with Mass. Mutual.

The debtor claims that Mass. Mutual wrongfully terminated his employment in breach of his employment contract. He seeks to have this Court award him damages for the differences in benefits, pension plan, and salary resulting from his allegedly wrongful termination as well as punitive damages for false and misleading statements allegedly made by Mass. Mutual during the negotiations, which he claims fraudulently induced him to accept the transfer to the Oak Brook office.

### II. *Core v. Noncore*

The debtor's complaint states that this Court has jurisdiction over the adversary action because he seeks recovery of property of the estate. The debtor's position is that his complaint is really a turnover action although it was commenced as one based on breach of contract and fraud.

The debtor asserts that this Court has jur-·isdiction pursuant to 28 U.S.C. § 157(b)(2)(A), (E), or (O).[1] As the debtor sees it, this action is a turnover proceeding because 11 U.S.C. § 1306 provides that property of the estate includes earnings from services performed by the debtor.[2] The problem with the debtor's jurisdictional analysis is that the debtor is not seeking recovery for services performed but rather is seeking damages based on an alleged breach of an employment contract. The debtor has not performed any services for which he seeks a turnover of property of the estate under 11 U.S.C. § 1306(a)(2) and 11 U.S.C. § 542(a) and (b). Mass. Mutual is not holding any earnings of the debtor. *Compare In re Denn,* 37 B.R. 33 (Bankr.D. Minn.1983).

■ The debtor's complaint clearly is based in contract and tort. It involves solely state law with the only connection to the bankruptcy estate being that if the debtor prevails, the estate will have more assets to distribute to the creditors. This fact alone is insufficient to give the bankruptcy court jurisdiction. *In re Cannon,* 51 B.R. 349, 351 (Bankr.E.D.Tenn.1985). The fact that a debtor or estate is the plaintiff does not transform a common law contract and tort action into a turnover proceeding. *In re Shaford Cos., Inc.,* 52 B.R. 832, 834 (Bankr.D.N.H.1985); *In re Atlas Automation, Inc.,* 42 B.R. 246, 247 (Bankr.E.D.Mich.1984).

Absent consent by the parties, this Court only has jurisdiction over this dispute if it is a core proceeding. This dispute is not a core proceeding. The concept of core proceedings is defined by example in 28 U.S.C. § 157. While the list of core proceedings in 28 U.S.C. § 157(b)(2) is not exhaustive, the list of what is and what is not a core proceeding in that provision makes it clear that, as a general rule, a matter that arises directly in a bankruptcy case under bankruptcy law is a core proceeding, and a matter that arises under nonbankruptcy law and happens to be of issue in a bankruptcy case merely because of the accidental fact that one of the parties to the dispute is a debtor in the bankruptcy case usually is not a core proceeding. *See In re Yagow,* 53 B.R. 737, 739–40 (Bankr.D.N.D. 1985). That is particularly true where, as here, the debtor is the *plaintiff* asserting a claim against one who asserts no creditor claim in the bankruptcy case.[3]

■ The debtor's adversary action falls squarely in the category of a noncore proceeding. The complaint raises no questions of substantive bankruptcy law. Had the debtor not been involved in a Chapter 13 proceeding, this case would have been brought either in state court or in the United States District Court under diversity jurisdiction. The only relationship Mass. Mutual has to this pending bankruptcy is that it is a defendant in this adversary action, and it employed a person who became a Chapter 13 debtor and is now suing it.

The essential features of this adversary action are hard to distinguish from those involved in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon,* Northern Pipeline filed for reorganization under Chapter 11 of the Bankruptcy Code. Subsequently, Northern Pipeline filed an adversary complaint in the bankruptcy court against Mar-

---

**1.** Section 157 states that "core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate; ...

(E) orders to turn over property of the estate; ... and

(O) other proceedings affecting the liquidation of the assets of the estate; ...."

**2.** Section 1306 provides, in part:

"(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first."

**3.** *Compare* 28 U.S.C. § 157(b)(2)(C). There is no evidence that the defendant here has filed a claim in this case.

athon for breach of contract and warranty, misrepresentation, coercion and distress. The Supreme Court, in a plurality opinion, held that only an Article III court could constitutionally try and finally determine traditional state law causes of action. The law suit was before the bankruptcy court only because the debtor had filed a petition for reorganization in that court. The similarities to this matter are obvious. The core/noncore dichotomy must be regarded as the Congressional response to the *Marathon* ruling embodying the *Marathon* principles. Looking at it this way, this breach of contract action is noncore for the same reasons Northern Pipeline's breach of contract action would be noncore under today's Judicial Code. The fact that the alleged breach here occurred postpetition is irrelevant. The timing of the breach cannot affect the defendant's constitutional rights to a determination of the dispute by an Article III court. *Cf.* 28 U.S.C. § 959.

Cases decided after *Marathon* make it clear that state law contract claims do not fall within the meaning of core proceedings. *See e.g., Mohawk Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 464 (D.Mass.1985); *In re Pierce,* 44 B.R. 601 (D.Colo.1984); *In re Shaford Companies, Inc.,* 52 B.R. 832 (Bankr.D.N.H.1985); *In re American Energy, Inc.,* 50 B.R. 175 (Bankr.D.N.D.1985); *In re Bokum Resources Corp.,* 49 B.R. 854 (Bankr.D.N.M. 1985); *In re Atlas Automation, Inc.,* 42 B.R. 246 (Bankr.E.D.Mich.1984).[4] Instead, these cases hold that breach of contract actions are noncore related proceedings. *See infra* note 5. The same analysis should apply to a debtor's tort claims. *Cf.*

*In re Environmental Research & Development, Inc.,* 46 B.R. 774, 779 (Bankr.S.D. N.Y.1985).

The debtor's reading of 28 U.S.C. §§ 157(b)(2)(A), (E), and (O) is overly broad. This case has nothing to do with the administration of the estate. It is strictly a state law contractual dispute. The cause of action is an asset of the debtors. It is arguably property of the estate. 11 U.S.C. §§ 541, 1306(a)(1). *Compare* 11 U.S.C. § 1327(b). Assuming it is property of the estate, this is not a "turnover." The estate has its property, the cause of action. The cause of action is not matured, payable on demand or payable on order.[5] It requires the estate to pursue litigation in order to liquidate any claim it might have. Let it pursue it in the appropriate forum.

Finally, if the catchall of 28 U.S.C. § 157(b)(2)(0) includes this cause of action there would be no such thing as a noncore proceeding. All debtors' causes of action would be "core" proceedings, including Northern Pipeline's action against Marathon—and 28 U.S.C. § 157(b)(2)—and the entire jurisdictional set up in bankruptcy would be unconstitutional. Congress certainly was aware of the *Marathon* holding and did not intend to disregard it in the 1984 amendments.

Consequently, the debtor's complaint seeking damages for breach of contract and fraud is a noncore related proceeding. It does not arise under the Bankruptcy Code, but is sufficiently related to the Chapter 13 case to be a related proceeding.[6] Under 28 U.S.C. § 157(c)(1), in non-

---

**4.** For an excellent discussion of decisions denying bankruptcy court jurisdiction over state law contract disputes, see *In re Bokum Resources Corp.,* 49 B.R. 854 (Bankr.D.N.M.1985).

**5.** *See* 11 U.S.C. § 542(b).

**6.** The test for whether a proceeding is related has been articulated in different ways. Some courts hold that "[r]elated proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court...." *Matter of Colorado Energy Supply, Inc.,* 728 F.2d 1283 (10th Cir.1984). Other courts state that a pro-

ceeding is related if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). It is essential that the instant dispute be at least a related proceeding because this Court's jurisdiction in all bankruptcy proceedings both core and noncore is derivative of the jurisdiction of the district court in bankruptcy matters. If the district court had no jurisdiction over the dispute, this Court could not hear it even with the consent of the parties. *See In re Denalco Corp.,* 57 B.R. 392 (N.D.Ill.1986). Under either of the definitions of related proceed-

core related proceedings, the bankruptcy judge sits, in effect, as a magistrate. In such matters, the bankruptcy judge can conduct hearings, but cannot enter a final judgment without the consent of the parties. In noncore proceedings, absent such consent, the bankruptcy judge can only make proposed findings of fact and conclusions of law and suggest a recommended judgment. The bankruptcy judge's recommendations only become final upon approval by the district court in a proceeding affording the parties the right to a de novo review on disputed issues. 28 U.S.C. § 157(c)(1). Because the parties have not consented to allow the bankruptcy court to enter a final decision in this adversary proceeding, this Court will conduct a trial in this noncore related proceeding and submit proposed findings of fact and conclusions of law and a recommended judgment to the district court.[7]

ing quoted above, there is no doubt that this dispute is a related proceeding. Therefore, the district court has jurisdiction over this dispute as a matter arising in or related to a bankruptcy case, 28 U.S.C. § 1334(b), and this Court should treat the dispute as a noncore related proceeding.

7. The defendant had requested a jury trial in this proceeding but withdrew this request in open court. The withdrawal obviated the need to deal with the thorny issues raised by a timely jury demand in a noncore proceeding.