In re SHAFORD COMPANIES, INC. d/b/a International Aromas, Debtor.

SHAFORD COMPANIES, INC., Plaintiff,

v.

CURR INTERNATIONAL COFFEES, INC., Defendant.

Bankruptcy No. 83–402.
Adv. No. 84–0108.

United States Bankruptcy Court, D. New Hampshire.

Sept. 11, 1985.

Mark Vaughn, Manchester, N.H., for Shaford Companies.

Jeffrey A. Schreiber, Burns & Levinson, Boston, Mass., for Curr Intern. Coffees, Inc.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This adversary lawsuit brought by the debtor in a Chapter 11 proceeding is before the court on motions filed by the defendant seeking determination that the lawsuit be dismissed, or that this court abstain from hearing the same, on various grounds. Included in the defendant's contentions is the assertion that if 28 U.S.C. § 157 (effective July 10, 1984) authorizes an untenured bankruptcy judge to try and determine the issues in this lawsuit, the statutory provision is unconstitutional as violative of the "judicial power" clause of Article III of the United States Constitution.

Pursuant to the requirements of 28 U.S.C. § 2403(a), the Clerk of this court certified to the Attorney General of the United States notification that the "core proceedings" provision of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (P.L. 98–353), codified as 28 U.S.C. § 157(b), was being challenged by the defendant in this adversary lawsuit as being unconstitutional.

The court held an extended hearing on the motions; has reviewed the contentions made by the parties at that oral argument; has considered the further memorandums submitted by the parties as to later case decisions; and now sets forth its findings and conclusions in this memorandum opinion.

## PROCEDURAL FACTS

A complaint was filed by the Chapter 11 debtor-in-possession on November 30, 1984 in this 1983 bankruptcy proceeding seeking the following relief: (1) defendant be ordered "to show cause why it should not pay the sums due the plaintiff" as royalties under a franchise agreement; (2) defendant be enjoined from doing business until it replaces certain required signs and logos and uses its name as required by the franchise agreement; and (3) defendant be ordered to make monthly reports as required by the franchise agreement. The debtor-franchisor and the defendant-franchisee entered into the franchise agreement in March of 1981 according to the complaint.

The complaint further alleges that the agreement requires the franchisee to use the signs, trademark labels, and logos used by the debtor in its "International Aromas" marketing; to pay royalties of five percent on gross sales; to make monthly report of sales, profit and loss statements; and asserts that the defendant has removed the required logos and signage indicating "International Aromas" and is doing business under another name.

The complaint finally alleges that the defendant owes royalties in excess of $5,000, has failed to make the monthly reports, and that the debtor lacks any adequate remedy of law and is suffering irreparable harm, etc. It also states that the franchise agreement provides that upon default by the franchisee the franchisee shall agree to injunctive relief against it.

The defendant has responded with an Amended Motion to Dismiss that alleges the following grounds supporting dismissal: (1) the plaintiff failed to effect service on the defendant; (2) the court lacks jurisdiction over the subject matter of the proceeding because "it is a non-core proceeding governed by state law" and should properly be heard in the U.S. District Court or appropriate state court; and (3) if the court finds the matter to be a core proceeding, or if the bankruptcy judge tries and determines the matter over the defendant's objection under § 157 of title 28, that application of § 157 is violative of the U.S. Constitution because "Curr is deprived of having an Article III judge preside over the case".

The motion assumes that a trial in the bankruptcy court would be a trial without a jury and asserts further that applying § 157 to try this matter in the bankruptcy court would also be unconstitutional by virtue of depriving the defendant of its right to a trial by jury.

## STATUTORY PROVISIONS

Under the 1984 bankruptcy legislation bankruptcy judges remain untenured judicial officers serving 14-year terms by appointment from the various courts of appeals. *28 U.S.C. § 152.* Bankruptcy judges serve as adjuncts to the district courts and derive their power to act in particular bankruptcy matters by virtue of reference orders as may be entered by the particular district judges involved. *28 U.S.C. §§ 151 and 157.* The jurisdiction of bankruptcy cases and proceedings is established in the district courts but may be exercised with certain limitations under reference orders by the bankruptcy judges. *28 U.S.C. §§ 157 and 1334.*

Under the provisions of Section 157(b) of Title 28, bankruptcy judges may hear and determine all "core proceedings" arising in referred bankruptcy case but are limited to merely hearing and making findings and recommendations to the district judge as to other matters.

Subsection (2) of § 157(b) lists a number of defined core proceedings for this purpose. In the present case the plaintiff debtor-in-possession relies primarily upon the following definitions to sustain a find-

ing that its adversary lawsuit is a core proceeding:

(2) Core proceedings include, but are not limited to—

(A) Matters concerning the administration of the estate;

\*     \*     \*     \*     \*     \*

(E) Orders to turn over property of the estate;

\*     \*     \*     \*     \*     \*

(O) Other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury, tort or wrongful debt claims.

■ The debtor first contends that its demand that the defendant pay over royalties due under the franchise agreement constitutes this proceeding a "turnover" proceeding under subsection (b)(2)(E) of § 157. This argument however is specious in that such a construction would in effect remove *any* distinction between core and non-core proceedings for purposes of bankruptcy court jurisdiction. Any cause of action demanding money damages or payment of sums due under contract could be construed to be a turnover in that sense. Cf. *In re Atlas Automation, Inc.*, 42 B.R. 246, 247 (E.D.Mich.1984).

It is true that § 542 of the Bankruptcy Code, providing for turnover of property to the estate, includes in subsection (b) thereof a provision stating that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order" shall pay the debt to the trustee or debtor-in-possession. Whatever the constitutional validity of this provision may be with regard to matured accounts receivable, it is clear in the present case that the adversary lawsuit has nothing to do with a "matured" debt in that sense.

The debtor is on firmer statutory grounds in relying on subsections (b)(2)(A) and (b)(2)(O) of section 157. The broad language of those subsections could be read to include the adversary lawsuit here in question. Determination of the status of the franchise agreement, collection of the past due royalties, and determination of ongoing rights and obligations under the franchise agreement, if found to be valid and enforceable, do "concern" the administration of the estate of this debtor in reorganization. Likewise, these same issues "affect" the "liquidation of the assets of the estate" or the "adjustment of the debtor-creditor" relationship. Any contractual rights the debtor has in the franchise agreement clearly are assets of this estate and involve debtor-creditor questions relating to the royalty agreement.

Under a literal reading of the statutory language, the court accordingly would be constrained to rule that this adversary lawsuit is a "core proceeding" as defined by Congress in 28 U.S.C..§ 157 and therefore is subject to trial and determination by a bankruptcy judge.

## EFFECT OF THE "MARATHON" DECISION

The defendant counters however that if the statute is so construed it is invalid under the ruling of the Supreme Court in *Northern Pipeline v. Marathon*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). That decision struck down as invalid under Article III of the constitution the prior jurisdictional provisions of the 1978 Bankruptcy Code allowing an untenured bankruptcy judge to try and determine the issues involved in an adversary lawsuit brought by a debtor in a Chapter 11 proceeding.

To determine the immediate question before this court, it will be useful to consider precisely what type of litigation was involved in the *Marathon* Case. Taking facts from the lower court opinions, as well as the Supreme Court opinion, we find an adversary lawsuit commenced by Northern Pipeline as debtor-in-possession involving claims for damages arising out of a contract between the parties for the construction of pipelines in Kentucky. The suit asserted damages in excess of $2,500,000 due to "breaches of contract and warranties, misrepresentation, coercion and du-

ress, extra work orders or quantum meruit." *Northern Pipeline v. Marathon*, supra, 102 S.Ct. at 2860; *Marathon Pipeline Co. v. Northern Pipeline*, 12 B.R. 946, 947 (Dist.Ct., Minn.1981); *Matter of Northern Pipeline Co.*, 6 B.R. 928, 929 (Bk'y Ct.,Minn.,1980).

Prior to filing its Chapter 11 proceeding Northern Pipeline had commenced a civil action against Marathon in the Federal District Court in Kentucky asserting the same claims for damages. The bankruptcy judge in Minnesota, in addition to denying the jurisdictional challenge to the adversary lawsuit, also rejected an alternative motion by Marathon to dismiss the adversary lawsuit in favor of the pending Kentucky civil action. He found that Northern Pipeline's finances had "deteriorated substantially" since the Kentucky filing, and that the commencement of the Chapter 11 filing in Minnesota "was a calculated move made by the debtor for its convenience and dictated by its financial condition." The court also noted that "to require [the debtor] to litigate this claim in [Kentucky] would impose an additional hardship on a company that is not now in a normal operating posture." *Matter of Northern Pipeline Co.*, supra, at p. 932.

The Supreme Court's decision holding that only an Article III tenured judge could constitutionally try and determine this lawsuit was a plurality decision by four Justices, joined by two Justices concurring in the result. In stating the concurring position Justice Rehnquist commented:

"From the record before us, the lawsuit in which Marathon was named defendant seeks damages for breach of contract, misrepresentation, and other counts which are the stuff of the traditional actions at common law tried by the courts at Westminster in 1789. There is apparently no federal rule of decision provided for any of the issues in the lawsuit; the claims of Northern arise entirely under state law. No method of adjudication is hinted, other than the traditional common law mode of judge and jury. The lawsuit is before the Bankruptcy Court only because the plaintiff has previously filed a petition for reorganization in that Court.

"The cases dealing with the authority of Congress to create courts other than by use of its power under Art. III do not admit of easy synthesis. In the interval of nearly 150 years between *American Insurance Co. v. Canter*, 1 Pet. 511 [26 U.S. 511, 7 L.Ed. 242] (1828), and *Palmore v. United States*, 411 U.S. 389 [93 S.Ct. 1670, 36 L.Ed.2d 342] (1973), the Court addressed the question infrequently. I need not decide whether these cases in fact support a general proposition and three tidy exceptions as the plurality believes, or whether instead they are but landmarks on a judicial 'darkling plain' where ignorant armies have clashed by night, as JUSTICE WHITE apparently believes them to be. None of the cases has gone so far as to sanction the type of adjudication to which Marathon will be subjected against its will under the provisions of the 1978 Act. To whatever extent different powers granted under that Act might be sustained under the 'public rights' doctrine of *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272 [59 U.S. 272, 15 L.Ed. 372] (1855), and succeeding cases, I am satisfied that the adjudication of Northern's lawsuit cannot be so sustained."

(102 S.Ct. at 2881–82).

This key passage from the concurring opinion in my judgment contains the only clear "holding" of the divided court in the *Marathon* case.

In the case presently before this court, the adversary lawsuit in question involves no federal rules of decision and the claims of the debtor arise entirely under state law. The lawsuit is before the federal bankruptcy court only because the plaintiff-debtor has previously filed a Chapter 11 petition in this court. The lawsuit is also a breach of contract case quite similar to the adversary action involved in the *Marathon* proceeding.

It is true that the procedural context under the 1984 legislation is somewhat different, i.e., the bankruptcy jurisdiction is expressly granted only to the district court (28 U.S.C. § 1334) and the conduct of bankruptcy judges is governed only by the reference procedures authorized by Section 157 of Title 28. However, in "core" matters the bankruptcy judge does try and determine all issues, subject only to standard "clearly erroneous" appeal procedures.

The bankruptcy judge in core trials can enter final judgments upon which execution by the U.S. Marshal may issue. Entry of final judgments against private parties, subjecting them to levy and execution, seems one of the most obvious instances of the use of "the judicial power of the United States" as specified in Article III of the Constitution. Thus, whatever other meanings the slippery concept of "jurisdiction" may have, the bankruptcy judge *does* exercise the bankruptcy jurisdiction granted the district courts under 28 U.S.C. § 1334 in core matters.

■ Without anything more, it appears clear that the actual holding in the *Marathon* case requires a determination that the adversary lawsuit brought here by Shaford Companies, Inc., cannot constitutionally be tried and determined by an untenured bankruptcy judge. Cf. *In re TWI Inc.*, 51 B.R. 470, 13 BCD 287 (Bk'y E.D.Va.1985) (state law fraudulent conveyance issues); *In re Pierce*, 44 B.R. 601 (D.C.Colo.1984) (breach of a leasing agreement); *In re American Energy, Inc.*, 50 B.R. 175, 13 BCD 200 (Bk'y N.D.1985) (collection of sums due under grain supply contracts and specific performance); *Mohawk Industries v. Robinson*, 46 B.R. 464 (D.C.,Mass.1985); (breach of warranty action against supplier); *In re Morse Electric Company*, 47 B.R. 234 (Bk'y N.D.Ind.1985) (breach of contract, bad faith injury to business, negligence); *In re Bokum Resources Corp.*, 49 B.R. 854, 13 BCD 11 (Bk'y N.M.1985) (debtor's counterclaim asserting contract breach and tortious interference); *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bk'y E.D.

Mich.1984) (collection of disputed accounts receivable).

■ None of the courts in the cited decisions found it necessary to directly rule upon the constitutionality of § 157(b)(2)(A) and (O) as applied to the ordinary civil lawsuits being pursued in their courts against outside party defendants not otherwise involved in the bankruptcy proceedings. Those courts avoided the question by interpretating the statute to not include the adversary lawsuit in question—citing numerous legislative history references indicating that Congress was well aware of the *Marathon* proscription in such instances and did not intend to violate the Article III requirement. I agree with this approach in view of the general principle that federal courts must consider nonconstitutional grounds for decision before reaching any constitutional questions. *Gulf Oil v. Bernard*, 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981); *Mobile v. Bolden*, 446 U.S. 55, 60, 100 S.Ct. 1490, 1495, 64 L.Ed.2d 47 (1980); *Kolender v. Lawson*, 461 U.S. 352, 361, n. 10, 103 S.Ct. 1855, 1860, n. 10, 75 L.Ed.2d 903 (1983).

Accordingly, I conclude that subsections 157(b)(2)(A) and (O) must be construed as not including an adversary lawsuit brought by a debtor-in-possession based upon a state law contractual cause of action against a defendant not otherwise involved in the bankruptcy proceedings. This conclusion follows from what I take to be the precise and actual holding of the United States Supreme Court in its *Marathon* decision in 1982.

### THE "MODIFIED MARATHON" CONTENTION

It has been contended that the *Marathon* result need not necessarily follow if the state law cause of action has some "nexus" to bankruptcy court powers or is otherwise important and/or crucial to the outcome of the bankruptcy liquidation or reorganization proceeding. See *In re Lion Capital Group*, 46 B.R. 850 (Bk'y S.D.N.Y.1985) (enforcing limited partners' contractual obligation to make capital contributions); *In*

*re Pied Piper Casuals, Inc.,* 50 B.R. 549, 13 BCD 290 (Bk'y S.D.N.Y.1985) (recovery under insurance policy for prepetition theft losses); *Baldwin-United Corporation,* 48 B.R. 49, 12 BDC 913 (Bk'y S.D.Ohio 1985) (recovery against former president on defaulted loans); *In re All American, Inc.,* 49 B.R. 926, 13 BCD 93 (Bk'y N.D.Ga.1985) (collection of prepetition receivables). Cf. also *In re Professional Sales Corp.,* 48 B.R. 651, 12 BCD 1274 (Bk'y N.D.Ill.1985); *In re Franklin Corp.,* 50 B.R. 620, 13 BCD 209 (Bk'y E.D.Pa.1985); *Matter of Salem Mortgage Co.,* 50 B.R. 34, 40 (Bk'y E.D. Mich.1985).

Judge Buschman makes a closely-reasoned argument in the *Lion Capital* and *Pied Piper* cases to the effect that the concurring Justices in the *Marathon* case may be amenable to finding some state law causes of action constitutionally triable before an untenured bankruptcy judge. The test is said to be whether a sufficient nexus to other important bankruptcy court powers is shown with regard to the particular lawsuit. While the argument is ingenious, it rests essentially not on anything the concurring Justices stated directly but rather upon the characterization of their position by Chief Justice Burger in his dissent in the *Marathon* case. He read the concurring opinion as applying only to "peripheral" types of state law lawsuits. The simple fact remains however that the concurring Justices themselves nowhere make any reference to such a "peripheral" qualification.

While the Supreme Court conceivably may "modify" its *Marathon* holding in a future case, it is not appropriate in my judgment for a lower federal court to anticipate any such modification when the precise effect of their actual holding is clear, at least insofar as it applies to the adversary lawsuit presently pending before this court. The foregoing construction of Section 157(b)(2)(A) and (2)(O) therefore stands.

## ABSTENTION

■ Although this court cannot constitutionally try and determine the issues involved in this adversary lawsuit, it *is* permissible under the 1984 legislation for the bankruptcy judge to try the matter and submit proposed findings and recommendations to the district judge. *28 U.S.C. § 157(c).* Here the defendants have demanded trial by jury. While there is presently a controversy as to whether the bankruptcy courts can conduct jury trials, due to certain ambiguities in the 1984 legislation, it is clear that it is totally infeasible for a bankruptcy judge to conduct a jury trial in a non-core matter since the action at the bankruptcy court level could only be a recommendation to the district judge. See *Mohawk Industries v. Robinson,* 46 B.R. 464 (D.C.Mass.1985). It is unnecessary to decide the jury trial question in the present case, however, since the court is disposed to grant the defendant's alternative motion for abstention in any event.

The debtor has proceeded with its plan of reorganization in the present case and there is no showing that resolution of this particular adversary lawsuit, or any similar ones with other franchisees, must necessarily be determined in the federal courts. Under the plan, which has been accepted by the creditors and confirmed by the court, the debtor will proceed to liquidate various assets and pursue litigation with some five franchisees including the present defendant.

Aside from the convenience to the debtor of litigating in one forum, there remains no important federal bankruptcy reorganization policy to be served by retaining such litigation in the federal courts. On the contrary, respect for the importance of the state law issues involved, and comity considerations involving the state courts, suggest instead that abstention by this court is the more appropriate resolution. *28 U.S.C. § 1334(e).*

Accordingly, a separate order shall be entered determining that the trial and determination of this lawsuit by the bankruptcy court is not authorized and providing further for abstention in favor of full litigation of the matters raised by this ad-

versary lawsuit in the appropriate state court.