### GARLAND & LACHANCE CONSTRUCTION COMPANY, INC.

v.

### CITY OF KEENE, by its PLANNING BOARD.

Civ. No. 90–126–S.

United States District Court, D. New Hampshire.

April 11, 1991.

Robert H. Fryer, Londonderry, N.H., James M. Cazanas, Sr. a/k/a James M. Cazanas and Johann Cazanas, for Garland and Lachance Constr. Co. Inc.

Ernest L. Bell, III, Keene, N.H., for City of Keene.

## ORDER

STAHL, District Judge.

This civil action follows an appeal by plaintiff Garland & Lachance Construction Company ("Garland") of a decision by the planning board of Keene, New Hampshire, to withdraw approval of Garland's plan to build a shopping plaza. On August 30, 1989, the parties settled that appeal. In the case now before the court, the City of Keene claims that Garland breached the terms of that settlement. At issue is whether this Court should abstain from deciding the dispute between Garland and Keene.[1]

### 1. Background

The following findings of the Bankruptcy Court, which held a hearing on this matter, are accepted in accordance with Bankruptcy Rules 5011 and 9033.[2]

In 1988, the City conditionally approved Garland's site plan to develop a shopping mall. Thereafter, the City revoked its approval after finding Garland had not satisfied certain conditions of that approval. Garland appealed that decision to the Superior Court. Those proceedings were settled by stipulation and decree on August 30, 1989, with the Superior Court's approval. On November 3, 1989, the City filed a claim in the Superior Court alleging Garland had failed to comply with the decree.

On December 14, 1989, Garland filed for bankruptcy under 11 U.S.C. § 1101 *et seq.* in the United States Bankruptcy Court for the District of New Hampshire. Thereafter, it applied to remove the Superior Court action to this Court.[3] *See* 28 U.S.C. § 1452(a) (allowing removal of certain bankruptcy related actions from state to federal court). The City responded by asking this Court to abstain from hearing the case. The matter was referred to the Bankruptcy Court pursuant to Bankruptcy

---

1. In December 1989, Garland filed for protection in federal bankruptcy court pursuant to Chapter 11 of the Bankruptcy Code. Keene's motion for abstention was referred for an advisory opinion to the Bankruptcy Court. That court recommended abstention in a Report and Recommendation issued on February 22, 1991.

2. Rule 5011 allows motions for abstention to be heard first by the Bankruptcy Judge. Rule 9033 states this Court may accept, reject, or modify the proposed findings of fact or conclusions of law.

3. Garland argues that because it is incorporated in the Commonwealth of Massachusetts, this Court has diversity jurisdiction under 28 U.S.C. § 1332(c). This argument is without merit and requires little discussion. *See* Defendant's Objection to Plaintiff's Motion to Suggest Reference to Bankruptcy Court, Ex. C. Garland's own president seems unsure where Garland is incorporated, and Garland offers no information pertaining to the location of its principal place of business.

Rule 5011(b). The Bankruptcy Court, in a well-reasoned Report and Recommendation, advised abstention. The Court accepts this recommendation insofar as it counsels discretionary abstention.

### 2. Discussion

Resolution of this case is governed by two statutes: 28 U.S.C. § 1452 and 28 U.S.C. § 1334. Subject to exceptions not relevant here, 28 U.S.C. § 1452(a) allows parties involved in bankruptcy related cases to

> remove any claim or cause of action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

Therefore, removal of this case was only appropriate if the Court has subject matter jurisdiction under 28 U.S.C. § 1334, which gives this Court authority to review "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

Discretion, however, is permitted under both statutes. Nothing prevents this Court "in the interest of justice, or in the interest of comity with state courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).[4] Moreover, the Court may remand any claim or cause of action "on any equitable ground." 28 U.S.C. § 1452(b).[5]

▮ Therefore, this Court's decision to abstain is discretionary even in cases arising under Title 11 or arising in cases under Title 11. Assuming, *arguendo*, this case does arise under Title 11 or arises in a case under Title 11, the Court exercises its discretion here to abstain. The Court finds the question of whether Garland violated the stipulation and decree is best decided under state law by the state court which

originally approved the stipulation, as it is in the best position to oversee its execution.

### 3. Conclusion

For the reasons stated above, the City's Motion for Abstention [document No. 3] is granted. Accordingly, this case, No. C–90–126–S, is remanded to the Cheshire County Superior Court.

SO ORDERED.

United States Bankruptcy Court,

District of New Hampshire.

In re Garland and Lachance Construction Company, Inc., Debtor.

Garland and Lachance Construction Company, Inc., Plaintiff,

v.

City of Keene, By Its Planning Board, Defendant.

Bankruptcy No. 89–11258.

CM No. 90–126–S.

### REPORT AND RECOMMENDATION FOR ABSTENTION

JAMES E. YACOS, Bankruptcy Judge.

To The Honorable

NORMAN H. STAHL

United States District Judge

This report and recommendation is in response to your order entered August 23, 1990, filed with the Clerk of the Bankruptcy Court on October 3, 1990, referring to the undersigned pursuant to Bankruptcy Rule 5011(b) the question of abstention requested by the above-named defendant with regard to the pending removed civil action. I conducted a hearing upon the motion for abstention on February 8, 1991; indicated at the conclusion of the hearing a number of questions that I had with regard to the matter; and directed the submission of proposed findings and conclusions by both parties simultaneously on February 15, 1991.

---

**4.** Abstention is *mandatory* if a party so moves, and the action is merely "related" to a case under title 11. 28 U.S.C. § 1334(c)(2).

**5.** An order issued under § 1452(b) "remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise." 28 U.S.C. § 1452(b).

Upon receiving the proposed findings and conclusions I noted that the record nowhere included a complete copy of the "Final Stipulation and Decree" entered by the Superior Court in Cheshire County on August 30, 1989 in *Garland and Lachance Construction Co. v. City of Keene*, Civil 88–E–119, which is at the heart of the dispute regarding the propriety of abstention by the U.S. District Court. Accordingly, the parties were requested following submission of the proposed findings and conclusions to provide a copy of the final stipulation decree and the same is attached hereto as an Annex.

Reference to the actual terms of the Final Stipulation and Decree entered by the State Court on August 30, 1989 is important in view of the chapter 11 debtor-plaintiff's characterization of same as nothing more than an "executory contract" subject to the special assumption or rejection powers provided a debtor in reorganization provided under § 365 of the Bankruptcy Code. Examination of the actual terms of the document however indicates that rather than constituting a simple "contract" involving "contracts for the provision of governmental services" that may be assumed by debtors under § 365 of the Bankruptcy Code, the agreement in question is intimately involved in the ongoing exercise of police and regulatory powers by the defendant as to which the governmental unit is *not* "free to exercise its police or regulatory powers by other means." See *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora*, 805 F.2d 440, 447, fn 10 (1st Cir.1986). The agreement in question, incorporated in the State Court decree, accordingly in my opinion is not an agreement with a governmental unit that would be assumable under § 365 pursuant to the dividing line indicated by the First Circuit in the *In re Corporacion de Servicios Medicos* case, inasmuch as the City of Keene has no way of enforcing its police and regulatory zoning powers *apart from* the enforcement or modification of the decree in question. Accordingly, the key predicate for the debtor's opposition to abstention, i.e., that there is a "core" issue of bankruptcy law involving assumption or re-

jection of an executory contract, is not sustainable. On that ground alone, therefore, I would recommend that the motion for abstention be granted. However, in view of the other issues raised and briefed by the parties, I will proceed with a full report and recommendation as to the various contentions for your consideration.

## I. STATUTE INVOLVED

The basic jurisdictional grant to the district courts with regard to bankruptcy cases and proceedings appears in 28 U.S.C. § 1334. The abstention provisions pertinent to this matter appear in subsection (c) thereof as follows:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

## II. PROCEDURAL BACKGROUND

This dispute originated in the Cheshire County Superior Court on October 25, 1988 as an appeal from a decision of the defendant, City of Keene to revoke the Debtor/Plaintiff's conditional site plan approval (the "State Proceeding"). The Debtor filed

under Chapter 11 of the Bankruptcy Code on December 14, 1989 and the State Proceeding was subsequently removed by the Debtor to the United States District Court for the District of New Hampshire (the "District Court") under the provisions of 28 U.S.C. § 1452(a) and § 1334(b).

The Defendant, City of Keene, by its Planning Board (the "City") filed a Motion for Abstention in the District Court on March 30, 1990 pursuant to the mandatory provisions of 28 U.S.C. § 1334(c)(2), or alternatively, the discretionary provisions of 28 U.S.C. § 1334(c)(1) (the "Motion"). Pursuant to Bankruptcy Rule 5011 the Motion was referred to the undersigned as indicated above.

III. FACTUAL BACKGROUND

The plaintiff, Garland and LaChance Construction Company, Inc. ("the Debtor") is a Massachusetts corporation formed for the purpose of developing and operating the commercial real estate known as The Riverside Mall in Keene, New Hampshire (the "Mall"). The corporation's principal place of business is Keene, New Hampshire. In 1988, the Debtor decided to expand the Mall and received conditional site plan approval from the City to do so. Subsequently the City Planning Board found that the Debtor had not satisfied the conditions of the approval and the site plan was voided by the City on September 27, 1988. The Debtor subsequently appealed the revocation of its site plan by the City. See *Garland and LaChance Construction Company, Inc. v. City of Keene*, Docket Number 88-E-119 (Cheshire County Superior Court) (the "State Proceeding").

The State Proceeding was resolved in a Final Stipulation and Decree (the "Decree") entered by the Cheshire County Superior Court on August 30, 1989. Under the terms of the Decree, the City agreed to reinstate the Debtor's site plan approval and the Debtor agreed to make an irrevocable assignment of its right to develop the mall property to an unrelated third party within 10 days of approval of the decree, and to execute a ground lease with such developer within 90 days of the date of the decree. Paragraph 15 of the Decree provides that "time is of the essence." The Stipulation further provides certain parameters within which Defendant must act in approving the development and expansion of the Shopping Center, and expressly reinstates the City's approval of SPR–563. The Stipulation allows the Shopping Center to be developed in accordance with the City's regulations in effect at the time SPR–563 was originally submitted, resulting in a savings to the estate of a substantial amount of developments costs (estimated by the Debtor to be several million dollars). The Stipulation requires that the Debtor pay to Defendant $650,000 in impact fees over an eight year period. The Stipulation includes numerous references to ongoing administrative activity and administrative approvals and represents a not uncommon device employed in effectuating ongoing regulatory action concerning a zoning matter. To refer to the Final Stipulation and Decree as a simple contract in my judgment is a misnomer in terms of its entry in the state court proceeding and the administrative reality of the surrounding circumstances of its ultimate implementation.

On November 3, 1989, the City filed a Petition to Find [Debtor] in Contempt and for other relief with the Cheshire County Superior court alleging, *inter alia,* that the Debtor had failed to comply with the terms of the Decree. The Debtor requested a continuance until late November, 1989 claiming the need for additional time to prepare large number of documentary exhibits. An informal conference was held by the Cheshire County Superior Court on November 9, 1989, but no orders were entered. As indicated above, the debtor filed its chapter 11 case in this Court on December 14, 1989.

On November 15, 1989 the Debtor filed an Objection and Answer to the City's Petition which raised numerous affirmative defenses including violation of an irrevocable appointment under the Decree by a third party developer; lack of good faith by the third party developer; the right to appoint an alternate third party developer; actions of third parties which make enforcement of

the decree inequitable; and good faith efforts in pursuing compliance with the Decree. On December 13, 1989, the City filed an objection to a ground lease provided by the Debtor alleging that it did not meet the requirements of the Decree. The Debtor responded to the City's objection to the ground lease on December 22, 1989.

The City, contending that the Debtor did not comply with the terms of the Decree, filed a Motion to Dismiss with Prejudice in Cheshire County Superior Court on February 28, 1990. The City claimed that the Debtor did not assign its development rights to an "unrelated" party as required by the Decree and that the Debtor did not execute a ground lease fulfilling the requirements of the Decree. Following dismissal, the Decree provides that the parties have no further rights thereunder. As indicated above, in my opinion the stipulation and decree in question do not constitute an assumable executory contract at all and therefore this "core" contention should be denied on that basis alone. However, in the event that you do not accept my view in that regard, I will also address the question further as though an assumable executory contract were involved.

The Debtor objected to the Motion to Dismiss on various grounds, and subsequently removed the state proceeding to the District Court. Prior to removal the Cheshire County Superior Court had not held any hearings on the merits of any of the various pleadings filed since entry of the decree. The City then filed its Motion for Abstention with the District Court in order to pursue its Motion to Dismiss the Debtor's appeal in Cheshire County Superior Court. The Debtor has objected to the City's Motion to Abstain and both parties have filed memoranda of law in support of their positions.

At the February 8 hearing, the City argued that this court should recommend mandatory abstention under 28 U.S.C. § 1334(c)(2) or, in the alternative, discretionary abstention under 28 U.S.C. § 1334(c)(1). The Debtor claims that neither form of abstention is appropriate.

## IV. MANDATORY ABSTENTION

1. The Movant's Motion for Abstention under the mandatory provision of 28 U.S.C. § 1334(c)(2) should be granted. Mandatory abstention is required when the Motion for Abstention is timely made and the underlying proceeding is (a) based on a state law claim or cause of action; (b) commenced in the state court; (c) capable of timely adjudication in the state court; (d) an action that could not have been commenced in a court of the United States absent the jurisdiction conferred under § 1334 for Title 11 cases; and (e) is *related* to a case under Title 11, but is not a case *arising* under Title 11 or *arising* in a case under Title 11.

2. All prerequisites outlined in § 1334(c)(2) for mandatory abstention have been satisfied. There is no dispute that the Motion for Abstention made by the City was timely. The state proceeding was based on the decision of the City Planning Board to revoke the Debtor's site plan approval for the proposed expansion of the mall. Based on state zoning and land use law, the Debtor filed an appeal of the revocation of approval of the site plan in the Cheshire County Superior Court prior to the bankruptcy filing. The resolution of the state proceeding does not present a federal question, a constitutional challenge or a basis for diversity jurisdiction, and the action could not have been commenced in the District Court absent the jurisdiction conferred under § 1334 for Title 11 cases.

3. The determination of whether a case is "related to" but not "arising under" a case under Title 11 requires an examination of the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon* the United States Supreme Court held that the bankruptcy Code unconstitutionally granted the Bankruptcy Court jurisdiction over a state law cause of action which was "related" to the debtor's bankruptcy case under Title 11, but did not "arise" under Title 11 or the debtor's bankruptcy case. The decision in *Marathon* struck down as invalid under Article III of the Constitution the prior jurisdictional provisions of the 1978

Bankruptcy Code allowing a non-article III judge to try and determine issues grounded in state law involving breach of contract claims against a defendant not otherwise involved in the bankruptcy proceeding and not requiring the application of any federal rule of decision.

4. The Debtor contends that the Decree is an executory contract and that since the Bankruptcy Court's power to approve or deny the assumption of executory contracts under § 365 of the Bankruptcy Code is a "core" proceeding, the State Proceeding is now within the jurisdiction of the bankruptcy Court as a matter "arising under" Title 11 and not merely "related" to a case thereunder.

5. Examples of core proceedings are set out in 28 U.S.C. § 157(b)(2). None of the enumerated provisions of § 157(b)(2) specifically addresses the situation where the Bankruptcy Court is asked to adjudicate state law legal issues in connection with a motion to assume an executory contract. However, Section 157(b)(2)(A) states that core proceedings including "matters concerning the administration of the estate" and § 157(b)(2)(O) defines as core "other proceedings effecting the liquidation of the assets of the estate or the adjustment of the debtor creditor or the equity security holder relationship...." The Debtor contends that under these provisions the State Proceeding is a core proceeding because it is an executory contract involving a major asset of the estate and, therefore, "concerns" the administration of the estate and may "affect" the liquidation of assets of the estate. However, this contention violates the spirit, if not the letter of the decision of the United States Supreme Court in *Marathon.*

6. Under the Debtor's contention the Bankruptcy Court has jurisdiction over a state law zoning and land use dispute because that dispute was resolved by a court approved stipulation between the parties. In order for the Bankruptcy Court to rule on the assumption of the decree as an executory contract, the Debtor's compliance with the terms of the decree, the status of the decree on the date of commencement of the bankruptcy proceeding, and the obligations of the respective parties under the Decree must first be determined. This determination will require interpretation of a state court order incorporating the Decree and the application of New Hampshire zoning and land use law, all of which are matters traditionally left to the state courts. Determining whether the debtor performed the obligations required by the Decree involves no federal rule of decision.

7. The State Proceeding was commenced by the Debtor prepetition, and is based on a cause of action under state land use and zoning laws against a defendant not otherwise involved in the bankruptcy proceedings. The City has not filed a proof of claim and has not affirmatively inserted itself into the bankruptcy proceedings in any other way. The matter is a related proceeding and should not be labeled "core" simply by the claim that it is important to the Debtor's reorganization. *See Shaford Companies, Inc. v. Curr International Coffees, Inc.,* 52 B.R. 832 (Bankr. D.N.H.1985). As I noted in the *Shaford* decision, the actual decision by the Supreme Court in the *Marathon* case involved a matter quite important and vital to that particular debtor's reorganization but that factor was not sufficient to sustain bankruptcy court jurisdiction. *Id.* at 834–836. The 1984 legislation which resulted in the 28 U.S.C. § 157 provisions on "core" and "noncore" jurisdiction was an attempt to implement the dividing line developed by the Supreme Court in the *Marathon* decision. Accordingly, the statutory provision in § 157 stating that core proceedings include "matters concerning the administration of the estate" cannot properly be given such broad effect as to obliterate the distinction intended under the *Marathon* decision, in my judgment, even though that broad language by itself obviously could be interpreted to include just about anything that in any way remotely affected the financial condition of a debtor in the Bankruptcy Court.

8. Other courts have found that claims arising entirely under state law could be defined as core bankruptcy matters under

the provisions of 28 U.S.C. § 157(a) and (b)(2)(O) if there is a "sufficient nexus" between the state proceeding and the bankruptcy estate. These courts hold that even a tangential connection between the bankruptcy estate and the state law proceeding transforms the state action into a core matter. *See Harley Hotels, Inc. v. Rain's International Limited,* 57 B.R. 773 (M.D.Pa.1985); *In re Republic Oil Corp.,* 51 B.R. 355 (Bankr.W.D.Wisc.1985); *In re Turbo Wind, Inc.,* 42 B.R. 579 (Bankr. S.D.Cal.1984) and *In re Texaco Capital, Inc.,* 77 B.R. 433 (Bankr.S.D.N.Y.1987).

9. However, this Court recommends a finding that the spirit of the decision in *Marathon* proscribes such a result in the present case because it would result in the Bankruptcy Court having jurisdiction over zoning and land use disputes under state law. The Supreme Court has recently indicated that no dispositive weight will be given to the "core" and "non-core" labels provided by the 1984 revision of the bankruptcy statutes in terms of constitutional analysis of rights held by persons involved in bankruptcy proceedings. *Granfinanciera S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 2800, 106 L.Ed.2d 26 (1989).

10. A decision not to abstain from jurisdiction over the State Proceeding is likely to lead to the District Court becoming entangled in issues of local land use and zoning law.[1] In determining whether the Debtor complied with the terms of the Decree, the federal court would need to review the original state court proceedings, the conditional site plan approval and the City's ultimate revocation of the approval of the site plan. Accordingly, the federal court would become intimately involved in local zoning and land use regulation under the City's police power and state law where no constitutional issues—and thus a federal question—is presented. This is the very scenario that *Marathon* sought to avoid.

For this reason, many Bankruptcy Courts have refused to label matters as core merely because there is an arguable "nexus" between the bankruptcy estate and a state cause of action. *In re American Energy, Inc.,* 50 B.R. 175 (Bankr.N.D.1985) (contract action commenced in state court billed as a turnover proceeding was not core merely because debtor sought to assume as an executory contract); *In re Bokum Resources Corp.,* 49 B.R. 854 (Bankr.N.M. 1985) (pre-petition contract claims were "related" proceedings although they could fall squarely within the subsections of 28 U.S.C. § 157(b)(2)); *In re Mohawk Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 464 (Bankr.D.Mass.1985) (debtor's breach of warranty claim was not a core proceeding). I myself criticized a too-easy resort to the nexus approach to *In re Shaford Companies, Inc.,* 52 B.R. 832, 836–837 (Bankr.D.N.H.1985), on the ground that such an approach would be an impermissible evasion of the Supreme Court's constitutional ruling in the *Marathon* case.

11. The Debtor attempts to characterize the State Proceeding as a straight-forward contract action capable of swift and uncomplicated resolution in the Federal Court merely because an agreement was entered into by the parties in an attempt to settle the underlying lawsuit. However, local planning boards and zoning boards of adjustment often enter into agreements with applicants in connection with the exercise of the police power inherent in zoning and land use regulation. Such agreements in my opinion do not change the nature of the underlying regulatory approval or disapproval as an exercise of the police power under state law.

12. The underlying action in the State Proceeding is not grounded in contract law. Rather, it is an appeal of the decision of a local planning board requiring the interpre-

---

1. Whether the District Court or the undersigned would actually conduct the hearing on these matters, if abstention is not ordered, would depend upon the analysis as to the "core" or "non-core" nature of the matter in question as set forth above and the District Court's view as to an appropriate procedure. If as I recommend the matter be viewed as a noncore proceeding, the undersigned could hear the matter but could only file a report and recommended findings and conclusions. This would then lead to a de novo hearing before the District Court. The District Court of course could elect to hear the matter directly by itself if that seemed appropriate.

tation and application of state and local land use planning and zoning laws. The entry of the Decree does not alter that fact. There is no precedent for federal involvement in such matters, in this context, and I believe the federal courts should be apprehensive of the possibility of opening the floodgates to allow such matters to be litigated in the Bankruptcy Courts under the guise of "core" proceedings. It has been held that the Bankruptcy Court appropriately should abstain from matters that "involve interpretations of state law in which the bankruptcy court does not possess any special expertise and there is no diversity jurisdiction between the parties." *In re Muir*, 107 B.R. 13, 17 (Bankr.E.D.N.Y. 1989). It is also appropriate to consider the fact that the debtor's attempt to litigate the matter in this Court in effect is a request to determine whether relief from a judgment entered by another court should be granted. *In re Taylor*, 115 B.R. 498, 502 (E.D.Penn.1990); See also *In re Interamericas Turnkey Development Co.*, 94 B.R. 9 (D.P.R.1988) (eminent domain proceeding).

13. In view of the foregoing, this Court finds that the Supreme Court's decision in *Marathon*, and the danger of becoming excessively entangled in issues of local and state law presented in this case proscribe labeling the State Proceeding a core matter. The record also establishes there is a lack of any independent jurisdiction to bring this matter into a federal court other than under 28 U.S.C. § 1334(c), inasmuch as no federal constitutional question is presented and diversity of citizenship does not exist between the plaintiff and the City of Keene. The action by the City was commenced prior to bankruptcy and the "timely adjudication" factor is also established in this case in that it has been shown that the Superior Court for Cheshire County, New Hampshire, with its current relatively light case load could address this matter in a timely fashion and indeed earlier than the undersigned could try the matter with the current heavy bankruptcy caseload in this district. The "timely" motion and the "state law issues" factors have been addressed earlier and also are

established. Therefore, this court recommends that the District Court is required to abstain from hearing the state proceeding pursuant to 28 U.S.C. § 1334(c)(2).

## V. DISCRETIONARY ABSTENTION

14. In the alternative, the District Court should exercise discretionary abstention under 28 U.S.C. § 1334(c)(1). Discretionary abstention is warranted where the interests of justice, comity with state courts, and respect for state law suggest that the matter should be heard by the state court. I therefore recommend that, even if the court should find that the Debtor's intention to assume the Decree as an executory contract transforms the state proceeding into a core matter, respect for state law suggests that the District court abstain in the interest of comity with state courts and respect for State law. "Permissive abstention is available in core as well as non-core proceedings." *In re Republic Readers Service, Inc.*, 81 B.R. 422, 427 (Bankr. S.D.Tex.1987). While it is true that discretionary abstention is normally inappropriate if a matter is a core proceeding, *See In re Arnold Print Works*, 815 F.2d 165 (1st Cir.1987), the rule is not inflexible and the Court retains the power to abstain for reasons of justice, comity with state courts, or respect for state law. *Id.* at 171.

15. The Debtor argues that several courts have held that where the state proceeding before the District Court or Bankruptcy Court does not present a question of "unsettled" state law and requires only a straight-forward application by the court, discretionary abstention is not appropriate. *Harley Hotels, supra.; In re The Bible Speaks*, 65 B.R. 415 (Bankr.Mass.1986); *J.D. Marshall International, Inc. v. Redstart, Inc.*, 74 B.R. 651 (Bankr.N.D.Ill. 1987). However, the State Proceeding does not lend itself to a straight-forward application of state contract law as suggested by the Debtor. Rather, it involves complex zoning and planning matters within the police power of the City and traditional jurisdiction of the state courts. Furthermore, many of these areas of law are "unsettled" by virtue of the fact that there are no court

decisions construing the local ordinance or state law, or the particular factual situation presented is unique and requires interpretation of the intent of the statute or ordinance by the Court. Local New Hampshire zoning and planning is by no means a well settled area of the law.

16. Even if the District Court finds New Hampshire law on the zoning and planning issues in this case are well settled, the District Court is given broad power to abstain in the context of bankruptcy matters and that power should be exercised by the court where a cause of action based primarily on state law can be litigated in a state court without substantial delay "irrespective of whether the legal issues present unsettled questions of state law." *Republic Readers,* 81 B.R. at 426. "State courts afford the best forum for deciding issues whose resolution turns on interpretation of state law." *Id.* at 427. This court notes that the Decree provides that matters concerning compliance with an interpretation of the Decree are to be heard on an expedited basis. The docket of the Cheshire County Superior Court is likely to permit a more expeditious decision on such issues than either the Bankruptcy Court or the District Court.

17. This Court recommends that discretionary abstention by the District Court is appropriate in the interest of comity with state courts and respect for state law. The legal issues involved arise primarily under state zoning and planning laws and should be heard in state court regardless of whether the case presents issues of "unsettled" New Hampshire law.

## VI. SUMMARY

18. In summary, the State Proceeding is an appeal of the decision of the city to revoke the Debtor's site plan approval under local zoning and land use laws. It is not a contract action in any sense relevant for present purposes. The Debtor claims the action of the city was arbitrary and unjustified under state and local land use laws. The parties' entry into a Stipulation attempting to resolve the dispute does not alter the character of the underlying ac-

tion, nor does the Debtor's attempt to assume the Decree as an executory contract transform the matter into a "core" bankruptcy proceeding. The resolution of the State Proceeding requires interpretation and application of a state court decree as well as New Hampshire zoning and planning law. These are matters in which the state court has particular expertise and in which the District Court should not become entangled.

19. Based on the foregoing, this Court recommends that the District Court is required to abstain from jurisdiction over the State Proceeding under 28 U.S.C. § 1334(c)(2), or that the District Court should exercise its power of discretionary abstention under 28 U.S.C. § 1334(c)(1) in the interests of comity and respect for state law, and that the foregoing policy considerations be incorporated as an additional basis upon which the District Court rules and enters its Order abstaining from hearing the state proceeding.

DATED: 2/22/91

### ANNEX

State of New Hampshire,

Superior Court.

Cheshire, SS.

Garland & Lachance Construction Company, Inc.

v.

City of Keene

By its Planning Board.

No. 88–E–119.

*Final Stipulation and Decree*

NOW COME the parties, Garland and LaChance Construction Company, Inc. (Plaintiff) and Planning Board of City of Keene (Defendant), and the individuals and trust described in Paragraph 2 below, and enter into this Agreement and Final Stipulation for a Decree, subject to the approval of the Court, and agree as follows:

1. Plaintiff is owner of a portion of the land containing Riverside Plaza/Cheshire Mall, Winchester Street, Keene, New

Hampshire, and holder of a Ground Lease covering the remainder of the land constituting Riverside Plaza/Cheshire Mall (being the real estate bounded on the East by land of Public Service Company of New Hampshire and now or formerly of the Ashuelot Branch, Boston and Maine Railroad; on the South by land of State of New Hampshire and known as the Keene Bypass; and on the West and North by Winchester Street).

2. James M. Cazanas, Sr. (a/k/a James M. Cazanas) and Johann Cazanas, his wife, individually (collectively "Cazanas"), and as Trustees of Whiteacre Interests (Trust), ("Trust"), owners in fee of the portion of Riverside Plaza/Cheshire Mall not owned by Plaintiff, are desirous of entering into this Stipulation and Agreement in order that complete relief be granted to them and to the named parties to this litigation. They agree to be bound by this Stipulation and any Decree entered herein.

3. The parties—Plaintiff, Defendant, Cazanas and Trust hereby enter into this Agreement and Stipulation for the purposes of settling this appeal from a September 27, 1988 decision of Defendant pertaining to a conditionally-approved Site Plan, SPR–563. This Agreement is subject to the approval of the Court and the entry of a Decree in accordance therewith.

4. Defendant will immediately, at a duly-noticed hearing, formally vote upon written request of Plaintiff, Cazanas and Trust, or their assignee, as the case may be that:

    a. The aforementioned September 27, 1988 action voiding conditionally-approved Site Plan SPR–563 ("SPR–563") be reconsidered and revoked.

    b. SPR–563 be reinstated in accordance with the terms of this Agreement and Stipulation and the Court Decree hereunder.

    c. Act upon a modified Site Plan as set forth in Paragraph 18 below if requested to do so by Plaintiff or its assignee.

    d. Reinstatement, however, shall be contingent upon Plaintiff, Cazanas and Trust obtaining and recording the necessary Drainage Easements and Releases from Public Service Company of New Hampshire. Such Easements must be approved as to form and content by the proper officials as provided for in SPR–563's conditional approval, which approval shall not be unreasonably withheld. Copies of such have been provided to Defendant's counsel for review.

5. Garland, Cazanas and Trust shall execute and deliver a General Release running to the City of Keene Planning Board and all of its members, both past and present, upon execution of this Final Stipulation and Decree and in such form as set forth in Exhibit "C" attached hereto.

    a. A separate Release shall, at the time of signing of this Final Stipulation and Decree, be similarly executed by Garland, Cazanas and Trust running to the benefit of the City of Keene, all City of Keene boards, agencies and officials, past or present, elected or appointed, in that form as set forth in Exhibit "D", attached hereto. This Release shall be held by Defendant's attorney, in escrow, pending the issuance of the building permit as set forth in Paragraph 6 below, whereupon such Release shall be immediately delivered to Defendant and/or City of Keene.

    b. Both Releases shall be broadly construed as releasing any and all claims of whatsoever nature, and any and all damages howsoever incurred by, Garland, Cazanas, and Trust as a result of the City of Keene or the Planning Board's actions and activities regarding SPR–563 in any manner howsoever arising down to the date of the entry of the decree hereunder.

6. Within twenty (20) days following an affirmative vote of Defendant as provided for in Paragraph 4 above, Plaintiff, or its assignee, shall resubmit to the proper Keene officials a Building Permit Application in the form of an "Application for Plan Examination and a Permit to Perform Work in the City of Keene" as was submitted by Plaintiff to City of Keene Inspections Department on October 28, 1987.

7. The parties hereto understand that Plaintiff, or its assignee, may choose not to occupy and/or build within the entire footprint shown on the original Plans submitted by Plaintiff and conditionally-approved by Defendant under SPR–563, except as provided in Paragraphs 18 and 23 b. below.

8. No Application will be submitted for any foundation or structure to be built outside of such footprint or that set forth in Paragraphs 18 and 23 b. below, unless submitted to and otherwise approved by Defendant following the full procedure used for amended Site Plan under current Planning Board Regulations.

9. It is also understood that Plaintiff may choose to build open air landscape and walkway courtyards where covered walkway areas may have been shown on the Plans submitted with SPR–563.

10. It is understood that the construction work to be done under SPR–563 was submitted for Building Permits under the 1987 BOCA Code Amendments adopted by the City Council of the City of Keene on or about October 1, 1987.

11. In no manner or fashion does this Agreement and any Decree hereunder bind any other department, official, or administrator of the City of Keene other than the Planning Board of the City of Keene as the named Defendant herein.

12. Plaintiff, Cazanas and/or Trust shall contribute to City as part of this amendment to SPR–563 (in lieu of the Fifty Thousand Dollars ($50,000.00) previously provided in the original Site Plan), a total sum of Six Hundred Twenty–Five Hundred Thousand Dollars ($625,000.00). The sum of Two Hundred Twenty–Five Thousand Dollars ($225,000.00) shall be paid over upon the issuance of the first Building Permit under SPR–563 (see Paragraph 6 above) and Fifty Thousand Dollars ($50,-000.00) per year on the anniversary of the issuance of the Building Permits for eight (8) successive years thereafter.

   a. This additional contribution shall be considered as impact fees arising sole-ly under SPR–563. Citywide real estate taxes, sewer assessments, water bills and the like are likewise excluded under this consideration and are unaffected by this Agreement.

   b. Plaintiff, Cazanas, Trust and City recognize that the City may propose a "special assessment" district for the Winchester Street area. In the event legislation creating such district is adopted, the parties recognize and agree that the City shall be free, if it so chooses, to attempt to enforce such legislation against Plaintiff, Cazanas and/or Trust, as their interests appear; but that should the City do so, Plaintiff, Cazanas and/or Trust, as their interests appear, are free to seek a declaratory judgment in the Cheshire County Superior Court challenging the enforceability of such against them, in view of the funds to be paid under this Agreement, and requesting a set-off or refund of any and all funds paid hereunder.

13. Plaintiff, Cazanas and Trust shall provide at the time of the payment of the initial Two Hundred Twenty–Five Thousand Dollars ($225,000.00) (per Paragraph 12 above) in a general form set forth in Exhibit "A" hereto to Defendant's counsel, an irrevocable letter of credit drawn upon a New Hampshire bank providing security for their payment of remaining funds required under Paragraph 12 above. The above contribution is calculated on the basis of a modified Plan anticipated to contain approximately three hundred seventy-five thousand (375,000) square feet. In the event the square footage built exceeds three hundred seventy-five thousand (375,-000) square feet, Plaintiff shall contribute an additional One Dollar ($1.00) per square foot of constructed feet over and above three hundred seventy-five thousand (375,-000) square feet, which entire amount shall be paid on or before the issuance of the applicable building permit(s).

14. Plaintiff, Cazanas and Trust agree that construction hereunder shall commence within sixty (60) days of the issuance of that Building Permit as set forth in Paragraph 6 above; subject to reason-

able extensions if Plaintiff's assignee is seeking approval from the Defendant for a modified Plan as per Paragraph 18 below.

15. Time is of the essence of this Agreement and Decree. If Building Permits are not applied for or construction does not begin as set forth herein and unless such construction is prevented by any cease and desist or similar stop work order or notice from the City of Keene, the State of New Hampshire or the United States government or their respective agencies, or as a result of, any Act of God, act of public enemy, governmental action, or casualty, cause or happening beyond the control of the Plaintiff, Cazanas or Trust or its assignee, then the Site Plan SPR–563 approval shall automatically expire and become void.

16. It is agreed that Plaintiff, Cazanas and Trust shall have the right and obligation to, and thereby shall, within ten (10) days of the entry of the Decree hereunder, assign their rights to the conditionally-approved Site Plan under SPR–563 and any rights relating to Construction Permits for Riverside Plaza/Cheshire Mall, to a reputable unrelated third party retail developer as the exclusive owner or agent of such Site Plan. Such appointment shall be irrevocable and in the form attached hereto as Exhibit "B", fully executed. Such owner or agent shall have full authority to carry out the construction contemplated under SPR–563 as may be modified, and the operation of the Mall.

    a. Upon execution of the same, and in no event later than ninety (90) days from the execution and approval of this Stipulation, Plaintiff shall deliver to Defendant's counsel a Ground Lease or similar document which shall have been or be capable of recording in the Cheshire County Registry of Deeds, evidencing the terms of the aforesaid assignment. Defendant's counsel shall review the same.

    b. In the event Defendant's counsel determines that said document does not, in good faith, accomplish the intent or purposes as set forth in Paragraph 16

c. below, he may, within fifteen (15) days of receipt of the same, file a Motion with the Cheshire County Superior Court, seeking a determination of such, and Plaintiff's counsel shall cooperate so as to hold an expedited, truncated Hearing on this issue.

    c. SPR–563 was previously approved as a Site Plan in and under the name of Plaintiff, to be developed by Plaintiff. However, Plaintiff, Cazanas and Trust desire, intend to and will assign the exclusive development and construction rights under SPR–563, as may be modified, over to an unrelated (to Plaintiff, Cazanas or Trust) developer or developers, that Plaintiff, Cazanas or Trust shall not be therein involved except as (i) the fee holder and Lessor, or (ii) as a limited partner or other form of passive investor in an entity wherein such third party developer shall be the general partner or controlling principal, or (iii) a joint venture wherein Plaintiff, Cazanas or Trust are passive investors and do not have a controlling interest, or (iv) under a tax-free exchange wherein the controlling interest and all officerships and directorships of Garland and LaChance Construction Company, Inc. are sold or otherwise transferred or assigned to such third party developer, but where Garland and LaChance Construction Company, Inc. may itself, remain as an active entity in order to maintain its continuing obligation under certain loan agreements. The involvements as set forth above are collectively referred to as Development Agreements. In consideration of the Defendant's agreement to allow Plaintiff, Cazanas and Trust to assign their interests in SPR–563, as may be modified and as a condition precedent to allowing Plaintiff, Cazanas and Trust to so assign, and thus as a condition of this entire Stipulation, Plaintiff, Cazanas and Trust agree that the authority for the responsibility of the development and construction of SPR–563, as may be modified, shall be in control of a reputable, unrelated (to Plaintiff, Cazanas

or Trust) developer or developers, and that Plaintiff, Cazanas or Trust shall not be therein involved except as set forth pursuant to the Development Agreements. Such Development Agreements or Agreements may provide for an interim construction and Development Agreement of not less than one (1) year, but must contain a right or option by said third party to Long–Term Lease the whole or a substantial portion of SPR–563 when completed.

d. In the event that any one such developer chooses not to construct or lease the entire SPR–563, as may be modified, Plaintiff, Cazanas and Trust may, by Sublease right under the Development Agreement with the initial third party, reserve the right to sublease for the construction and development and long-term leasing of the remainder of SPR–563 as may be modified, provided such third party developer meets the same criteria as set forth above, and provided further that an executed copy of such Development Agreement is provided to Defendant's counsel having the same rights to a Hearing in the event he determines such Development Agreement does not, in good faith, meet the intents and purposes of this Paragraph 16.

e. In the event that anytime after the entry of this Decree Defendant, or any administrative department of the City of Keene, has reason to believe that Plaintiff, Trust, Cazanas or any of their heirs, administrators, executors, successors or assigns are in violation of any of the terms of this Agreement and Decree and believe it necessary to engage legal counsel or other experts in order to make that determination and bring this matter before this Court for consideration and enforcement then Plaintiff, Trust, Cazanas or their heirs, administrators, executors, successors or assigns shall be liable for all costs and expenses incurred by Defendant and/or the City of Keene in reasonably bringing such enforcement ac-

tion. The matter of reasonableness of such action and of such costs and expenses including attorney's fees shall be presented to the Court and it shall determine whether the action so brought was instituted reasonably. In the event the Court determines the Defendant's or the City's actions *were* reasonable, whether or not Defendant or City of Keene prevails, then Plaintiff, Trust, Cazanas or their heirs, executors, administrators, successors or assigns shall pay said fees and costs. If the Court determines the Defendant's or the City's actions to be unreasonable, Plaintiff, Trust, Cazanas or its assignee shall be entitled to its attorneys fees and related costs and expenses in defending such action.

17. The assignment contemplated in Paragraph 16 above shall not, however, serve to release Plaintiff from any responsibilities incurred by it prior to the date of this Decree relative to Riverside Plaza/Cheshire Mall.

18. If contemplated by Plaintiff, Cazanas and Trust, or their assignee, modifications to SPR–563 may be submitted by the assignee at the time of a Hearing contemplated in Paragraph 4 above, or within a three (3) month period of Defendant's vote to reinstate SPR–563. Such modification—provided it falls within the footprint of that Plan submitted 7/88 by Plaintiff (entitled "Revised, 7/17/88," and found in the Certified Record at "Insert File, 20," with a yellow number "20" written thereon)—shall be subject to all the conditions of the original SPR–563 except as may be modified herein and shall be considered as a modification to SPR–563 and shall be processed by Defendant as such and under those Site Plan Regulations as in effect on September 22, 1986, with time being of the essence.

19. Any modification to SPR–563 submitted after the three (3) month period as set forth in Paragraph 18, time being of the essence, or any additional development proposed for that Site, shall be considered to be a new Site Plan Application and shall be

processed as such under the Site Plan Regulations in effect at that time.

20. On the present SPR–563 Plan there is an entrance from Riverside Plaza/Cheshire Mall in its Northeasterly corner running into the Winchester, Pearl, and Island Street intersection. Plaintiff agrees that, in reinstating SPR–563 pursuant to Paragraph 4, a condition shall be added that said entrance shall be closed, and no curb cut shall be made or allowed at said intersection. Plaintiff and Defendant agree that prior to the issuance of any Building Permit, and within ninety (90) days at the latest, the Site Plan shall be modified to show the closing of this entrance and Plaintiff or its assignee shall submit new and revised Plans (which may be part of the aforesaid modification) showing the closing of this intersection but in all other respects The Modified Plan shall be the same as the present conditionally-approved Plan, which revised Plan shall be approved by Planning Board.

21. Subject to the City of Keene's rights to obtain title to the Ashuelot Branch of the former Boston and Maine Railroad on the Easterly side of SPR–563, Plaintiff may at some time in the future attempt to create an entrance from Riverside Plaza to Route 101. Defendant agrees to consider the matter at that time in accordance with the City of Keene's Master Plan.

22. Plaintiff, Cazanas and Trust, or their assignee, shall be responsible for obtaining all applicable State and Federal Permits necessary for construction under SPR–563.

23. Plaintiff recognizes that this Agreement and Decree effects only Plaintiff, Cazanas, Trust and Defendant. It in no manner or fashion effects or is binding upon any other City of Keene department, board or agency, or the Keene City Council. This Agreement does not effect any waiver of any City Regulations or Ordinances unless specifically set forth herein.

a. Defendant, however, represents that a copy of this Stipulation shall, upon execution and approval by the Court, be delivered to Keene City Council and the Keene Building Department.

b. This Agreement and Stipulation is entered into with the understanding that the original Plan will be approved but that Plaintiff's assignee intends to submit a modification which will downsize SPR–563, and that such downsizing the Plan, provided such is within the original envelope, will not require a resubmission to Defendant (but which will be reflected in all subsequent Building Permit Requests or Applications).

24. Failure of Plaintiff, Cazanas, Trust or its successors or assigns to carry out any of the provisions of this Decree shall result in the dismissal of the appeal "with prejudice". Following dismissal Plaintiff, Cazanas, Trust and their successors shall have no further rights hereunder. Such failure shall be determined at an expedited Hearing before the Cheshire County Superior Court, at the request of Defendant.

25. SPR–563 shall, upon approval of Defendant as required under Paragraph 4 above, be considered amended in accordance with the terms and conditions of this Stipulation.

26. This Stipulation, Agreement and Decree shall be binding upon all parties, Cazanas and Trust, and their respective heirs, administrators, successors and assigns.

Dated at Keene, New Hampshire this 10 day of August, 1989.

Respectfully submitted,

Garland and LaChance Construction Company, Inc.

By Johann Cazanas
   Its President, duly authorized

City of Keene Planning Board

By [Signature]
   Its Chairman, duly authorized

James M. Cazanas

James M. Cazanas, Sr. a/k/a James M. Cazanas, individually and as Trustee of Whiteacre Interests (Trust)

Johann Cazanas

Johann Cazanas, individually and as Trustee of Whiteacre Interests (Trust)

Stipulation approved and Decree entered in accordance therewith.

August 30, 1989

[Signature]

Presiding Justice